FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 8, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 8, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) ) ) | No. 97066-1 |
| AMANDA CHRISTINE KNIGHT, | ) ) ) | En Banc |
| Respondent. | ) ) | Filed: October 8, 2020 |
| _____ | ) | |

OWENS, J. — In 2010, Amanda Christine Knight and her accomplices ransacked James and Charlene Sanders'[1] home, zip-tied them, placed them face down on the floor, stole their wedding rings off their fingers at gunpoint, pistol-whipped Charlene and her son, and shot and killed James Sanders. A jury convicted Knight of multiple crimes, including felony murder in the first degree, two counts of robbery in the first degree, two counts of assault in the second degree, and burglary in the first degree. Knight now challenges these convictions under double jeopardy in a personal restraint petition (PRP), arguing that her robbery and felony murder conviction against James, as well as her robbery and assault conviction against Charlene, should merge.

---

[1] James Sanders and Charlene Sanders were married and have the same last name. For purposes of clarity, we refer to them by their first names in this opinion. No disrespect is intended.

The Court of Appeals held that the two convictions against James merge, but declined to review Knight's convictions against Charlene because the Court of Appeals had previously reviewed and dismissed that double jeopardy claim on direct appeal.

We hold that Knight's convictions against James Sanders do not merge and that review of her convictions against Charlene Sanders is barred. Knight's robbery and felony murder convictions against James served independent effects, falling under an exception to the double jeopardy merger doctrine. However, the Court of Appeals correctly held that Knight's claim against her convictions in regards to Charlene is barred as it was already raised and dismissed on direct appeal. Accordingly, we affirm in part and reverse in part the Court of Appeals' ruling, affirm Knight's original conviction and sentence, and dismiss her personal restraint petition.

FACTS

In April 2010, James and Charlene Sanders posted an advertisement on Craigslist, seeking to sell a wedding ring. On the evening of April 28, after informing the Sanderses they were interested in purchasing the ring, Amanda Knight and three other men arrived at the Sanderses' residence. James invited Knight and one other man into the kitchen where Charlene soon joined them. Just as the transaction was seemingly about to be completed, Knight's accomplice drew a gun and pointed it at the Sanderses. While holding James and Charlene at gunpoint, Knight and her

accomplice zip-tied the couple, placed them face down on the floor, and took their wedding rings off their fingers.

After Knight and her accomplice stole the Sanderses' rings, Knight's two remaining accomplices entered the Sanderses' house, went upstairs, and brought the Sanderses' two children downstairs at gunpoint. Both children were then zip-tied and one of them was pistol-whipped in the head. As Knight proceeded to ransack the rest of the house, Knight's accomplices demanded that Charlene tell them the location of their safe. When she denied owning a safe, they kicked her in the head and once again held her at gunpoint.

The Sanderses then admitted to owning a safe, and James agreed to provide Knight's accomplices with the combination. At that point, James was pulled off the floor and his zip tie was loosened. James then broke free of his restraints and jumped on one of the accomplices. James was attacked and pistol-whipped in the head before he was fatally shot three times. After James was shot, Knight and her accomplices fled. The police declared James dead at the scene.

A week later, Knight turned herself in and confessed. The police charged Knight with one count of first degree murder while in the furtherance of a robbery (i.e., felony murder), two counts of first degree robbery, two counts of second degree assault, and one count of first degree burglary, all with firearm enhancements. At trial, the jury was presented with 45 jury instructions, one of which stated that "[a]

person commits the crime of Murder in the First Degree when she or an accomplice commits Robbery in the First Degree and in the course of or in furtherance of such crime she or another participant causes the death of a person other than one of the participants." Clerk's Papers at 335. In April 2011, the jury found Knight guilty on all counts, and the trial court sentenced Knight to 860 months in prison.

Knight appealed, arguing that her robbery and assault convictions against Charlene Sanders merge and that her separate sentences violate double jeopardy. *State v. Knight*, 176 Wn. App. 936, 940-41, 309 P.3d 776 (2013). The Court of Appeals disagreed and dismissed Knight's appeal. *Id.* at 951, 956.

In July 2016, Knight filed a PRP with the Court of Appeals, relitigating her claim that her assault and robbery convictions of Charlene Sanders merge and raising a new claim that her convictions for the robbery and felony murder of James Sanders merge as well.[2] The Court of Appeals first denied Knight relief, but Knight filed a motion for reconsideration; the Court of Appeals subsequently held that Knight's felony murder conviction merged with her robbery conviction against James Sanders, but that Knight's claim regarding her robbery conviction and assault conviction against Charlene Sanders was barred from review.

---

[2] Knight also argued that the evidence at trial was insufficient to prove first degree felony murder. The Court of Appeals dismissed this claim, and Knight did not appeal this portion of the Court of Appeals' ruling. *In re Pers. Restraint of Knight*, noted at 7 Wn. App. 2d 1076, 2019 WL 1231402, at *9. Therefore, we do not consider it here.

Both parties filed motions for discretionary review, which we granted. The Washington Association of Criminal Defense Lawyers filed an amicus brief.

ISSUES

1.     Do Knight's felony murder and robbery convictions against James Sanders violate double jeopardy?

2.     Is Knight's claim—arguing that her assault and robbery convictions against Charlene Sanders violate double jeopardy—barred from review?

ANALYSIS

*1.  Knight's Felony Murder and Robbery Convictions against James Sanders Do Not Violate Double Jeopardy*

Whether separate convictions violate double jeopardy is a question of law, which we review de novo. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). Generally, double jeopardy means that defendants are protected from being convicted for the same offense twice. WASH. CONST. art. I, § 9; U.S. CONST. amend. V. "In order to qualify as the 'same offense' for double jeopardy purposes, the two offenses must be the same both in law and in fact." *State v. Arndt*, 194 Wn.2d 784, 815, 453 P.3d 696 (2019) (citing *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)). "'Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense.'" *State v. Freeman*,

153 Wn.2d 765, 771, 108 P.3d 753 (2005) (quoting *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004)).

When determining whether two convictions and sentences violate double jeopardy, our analysis begins with whether the legislature "authorized cumulative punishments for both crimes," either via "express or implicit legislative intent." *Id.* at 771-72. Here, neither the statute for felony murder nor the statute for first degree robbery explicitly authorizes these crimes to be punished separately from any related crime. *See* RCW 9A.32.030; *see also* RCW 9A.56.190, .200. Furthermore, these statutes' legislative history do not reflect that the legislature intended to punish these offenses separately, making legislative intent unclear in this case.

When our examination of legislative intent does not provide an answer, we then analyze the convictions under the *Blockburger*[3] test: "'[w]here *the same act or transaction* constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision *requires proof of a fact* which the other does not.'" *Freeman*, 153 Wn.2d at 772 (internal quotation marks omitted) (quoting *Orange*, 152 Wn.2d at 817). If our analysis stopped here, then Knight's separate convictions would violate double jeopardy because Knight's felony murder charge required the jury finding that Knight committed a robbery against James Sanders. *See* RCW 9A.32.030(1)(c)(1); *see also*

---

[3] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

RCW 9A.56.190, .200. However, other doctrines and exceptions apply to our double jeopardy analysis that we must consider before making a final determination.

When legislative intent is unclear, we also consider whether the merger doctrine is applicable. *Freeman*, 153 Wn.2d at 772. "Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." *Id.* at 772-73 (citing *State v. Vladovic*, 99 Wn.2d 413, 419, 662 P.2d 853 (1983)). Again, if our analysis stopped here, Knight's separate convictions would violate double jeopardy because felony murder is an offense "raised by conduct separately criminalized by the legislature" that applies in Knight's case—first degree robbery. RCW 9A.56.200; *Freeman*, 153 Wn.2d at 772-73.

However, under the merger doctrine, "even if on an abstract level two convictions appear to be for the same offense or for charges that would merge, if there is an independent purpose or effect to each, they may be punished as separate offenses." *Freeman*, 153 Wn.2d at 773 (citing *State v. Frohs*, 83 Wn. App. 803, 807, 924 P.2d 384 (1996)). "'To establish an independent purpose or effect of a particular crime, that crime must injure the person or property of the victim or others in a separate and distinct manner from the crime for which it also serves as an element.'" *Arndt*, 194 Wn.2d at 819 (quoting *State v. Harris*, 167 Wn. App. 340, 355, 272 P.3d

7

299 (2012)). "This exception is less focused on abstract legislative intent and more focused on the facts of the individual case." *Freeman*, 153 Wn.2d at 779.

Applying these principles in *Freeman*, we found that a defendant's first degree assault and first degree robbery charges did not have independent purposes or effects. Freeman ordered the victim, at gunpoint, to hand over all of his valuables. When the victim refused, Freeman shot him and robbed him before leaving the victim in a driveway. *Id.* at 769. We held that Freeman shot the victim "to facilitate the robbery," therefore these charges did not serve independent purposes or effects from each other. *Id.* at 779.

In contrast, there was a clear independent effect of James Sanders' murder from his charged robbery; unlike the defendant's charges in *Freeman*, which involved the same conduct, Knight had already completed the first robbery before the second robbery began that led to her felony murder charge. A defendant commits a robbery when they "unlawfully take[] personal property from the person of another . . . by the use or threatened use of immediate force." RCW 9A.56.190. "[T]he unit of prosecution for robbery is each separate forcible taking of property from or from the presence of a person having an ownership, representative, or possessory interest in the property, against that person's will." *State v. Tvedt*, 153 Wn.2d 705, 714-15, 107 P.3d 728 (2005). Thus, Knight committed the robbery she was charged with when she and

8

her accomplice took James' ring off his finger; once James was held at gunpoint and had his ring removed, the robbery was complete.

Subsequently, James was pulled up from the floor and had his zip tie loosened in order to guide Knight's accomplices to the safe—a separate robbery. In the middle of this new robbery, James attacked Knight's accomplices, who then killed James—completing Knight's felony murder charge, as James' murder was in furtherance of a second, distinct robbery. Based on the chronology of these events, James' "'person or property'" was injured "'in a separate and distinct manner'" when he was robbed of his ring, and then injured "'in a separate and distinct manner'" when he was shot in furtherance of Knight's accomplices robbing the Sanderses of their safe. *Arndt*, 194 Wn.2d at 819 (quoting *Harris*, 167 Wn. App. at 355). Knight's convictions against James Sanders had "independent effects" from each other and thus do not violate double jeopardy.

In holding otherwise, the Court of Appeals used a transactional analysis of robbery to conclude that Knight's robbery against James Sanders had not been completed at the time he was shot, and it was completed only once Knight and her accomplices fled the scene, thus merging her felony murder charge and robbery charge. *In re Knight*, 2019 WL 1231402, at *6. But we have used the transactional view of robbery to conclude only that such force required to complete a robbery need not be contemporaneous with the taking itself. *State v. Johnson*, 155 Wn.2d 609, 611,

121 P.3d 91 (2005) (citing *State v. Handburgh*, 119 Wn.2d 284, 830 P.2d 641 (1992)).

Even though we have held in the past that each unit of prosecution for robbery cannot be based on each item that is stolen from one person, *Tvedt*, 153 Wn.2d at 714, we are still faced with the requirement that we must look to the facts of the case to see if there was a "*separate* forcible taking of property . . . from the presence of a person having an ownership . . . interest in the property." *Id.* at 714-15 (emphasis added), 717 (citing *State v. Bobic*, 140 Wn.2d 250, 266, 996 P.2d 610 (2000)). We conclude that even though both the ring and the safe were owned by James, the circumstances in which these items were stolen were completely distinct from each other as to constitute two "separate forcible taking[s] of property," thus the first robbery of James was completed once his ring was taken off his finger at gunpoint.

Knight argues that the jury instructions did not specify which crimes were connected to which actions and that this lack of clarity resulted in the jury not knowing or finding which actions supported which convictions. We disagree. Beyond the cases that Knight cites to in support of this claim—none of which conclude that a lack of specificity in jury instructions alone violates double jeopardy—Knight's assertion seems to relate to what we stated in *State v. Coleman*: "When the prosecution presents evidence of multiple acts of like misconduct, any one of which could form the basis of a count charged, either the State must elect which of

such acts is relied upon for a conviction or the court must instruct the jury to agree on a specific criminal act." 159 Wn.2d 509, 511, 150 P.3d 1126 (2007).

The State made this election during its closing argument. Such an election by the State need not be formally pleaded or incorporated into the information. *State v. Carson*, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015). As long as the election clearly identifies the particular acts on which charges are based, verbally telling the jury of the election during closing argument is sufficient. *Id.* The State listed each count and which acts applied to which count during closing argument. 7 Verbatim Report of Proceedings (VRP) at 1002-07. The State, concededly, was unclear when discussing the felony murder count and which robbery applied to that count; however, before listing such counts, the State sequenced each of the acts Knight and her accomplices performed, clearly showing that the robbery of the ring was complete before Knight's accomplices engaged in another robbery of the Sanderses' safe and the subsequent murder of James Sanders. VRP at 997-99.

Knight argues that we *must* look at the jury instructions to determine whether such crimes merge under double jeopardy, citing *State v. Kier*, 164 Wn.2d 798, 194 P.3d 212 (2008), in support. Resp. of Amanda Knight to State's Mot. for Discr. Review at 7-9. While we did look at the jury instructions in *Kier*, we never stated the jury instructions *must* lay out the facts underlying each charge. We looked at the entire trial record in *Kier* to determine if there was ambiguity in the defendant's

charges. 164 Wn.2d at 808-11; *see also State v. Mutch*, 171 Wn.2d 646, 664, 254 P.3d 803 (2011) ("'[I]n reviewing allegations of double jeopardy, an appellate court may review the entire record to establish what was before the court.'" (quoting *State v. Noltie*, 116 Wn.2d 831, 848-49, 809 P.2d 190 (1991))). And in contrast to *Kier*, where the State's evidence failed to stipulate which robberies applied to which victims, 164 Wn.2d at 814, when looking at the trial record here, the State clearly laid out to the jury which actions applied to which of Knight's charges against James Sanders.

### 2. *Knight's Collateral Attack on Her First Degree Robbery and Second Degree Assault Convictions against Charlene Sanders Is Barred*

Knight's double jeopardy challenge to her robbery and assault convictions against Charlene was fully litigated on the merits and disposed of on direct appeal. *Knight*, 176 Wn. App. at 956. Accordingly, Knight is barred from renewing this claim in her PRP unless we determine that the interests of justice require relitigation of this issue. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004)). "The interests of justice are served by reconsidering a ground for relief if there has been 'an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application.'" *Id.* (internal quotation marks omitted) (quoting *In re Pers. Restraint of Stenson,* 142 Wn.2d 710, 720, 16 P.3d 1 (2001)).

Knight argues that since her direct appeal was decided in 2013, an intervening decision by Division One of the Court of Appeals, *State v. Whittaker*, 192 Wn. App. 395, 416-17, 367 P.3d 1092 (2016), compels our review of these two convictions. Knight is incorrect. Knight argues that *Whittaker* established a new rule for courts reviewing double jeopardy claims; specifically, that the language in both the charging documents and the jury instructions or verdicts must exclude the possibility that the defendant has been punished twice for the same offense. However, as discussed above, the proper application of the merger doctrine is not confined to the jury instructions or the charging information—to the contrary, we look to the entire trial record, particularly the evidence presented to the witnesses, closing arguments, *and* the jury instructions. *Kier*, 164 Wn.2d at 813. Knight's reliance on *Whittaker* is unavailing and her claim that collateral review is warranted in the interests of justice fails. Because Knight fails to raise any other justification for reconsideration, collateral review of her convictions against Charlene Sanders is barred.

## CONCLUSION

We hold that Knight's robbery and felony murder charges against James Sanders had an independent effect, as the first robbery against James was already completed before James was murdered in the furtherance of a second, distinct robbery. We further hold that Knight's second claim—that her robbery and assault convictions against Charlene Sanders violate double jeopardy—is barred because the

13

Court of Appeals already reviewed and dismissed this claim on direct appeal.

Accordingly, we affirm in part and reverse in part the Court of Appeals' judgment,

and we affirm Knight's original conviction and sentence, effectively dismissing her

personal restraint petition.

_Owens, J._

WE CONCUR:

_Stephens, C.J._

_Johnson, J._

_Madsen, J._

_Whitener, J._

14

No. 97066-1

YU, J. (dissenting) — The majority holds that Amanda Christine Knight's

separate convictions for the robbery and felony murder of James Sanders[1] do not

violate the constitutional prohibition on double jeopardy because they had

independent effects. To reach this holding, the majority goes beyond the jury's

verdicts to engage in independent appellate fact-finding, contrary to this court's

own precedent. I would decline to do so and would therefore affirm the Court of

Appeals on this issue. Furthermore, I would reach the merits of Knight's double

jeopardy challenge to her separate convictions for the robbery and assault of

Charlene Sanders because the interests of justice require us to do so. On the

---

[1] For clarity, we will use James Sanders' and Charlene Sanders' first names in this opinion. No disrespect is intended.

merits, I would hold that these separate convictions violate double jeopardy principles. I therefore respectfully dissent.

## ANALYSIS

A.    Knight's separate convictions for the robbery and felony murder of James Sanders violate the constitutional prohibition on double jeopardy

The State and federal constitutions prohibit the government from putting a person in "jeopardy" twice for the "same offense." WASH. CONST. art. I, § 9; U.S. CONST. amend. V. This prohibition on double jeopardy means that courts may not "enter multiple convictions for the same offense." *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). In deciding this constitutional issue, "[o]ur review is de novo, and legislative intent is the touchstone." *State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008).

> We follow four analytical steps to determine legislative intent regarding whether cumulative punishment is authorized:
> (1) consideration of any express or implicit legislative intent,
> (2) application of the *Blockburger*[ *v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)], or "same evidence," test,
> (3) application of the "merger doctrine," and (4) consideration of any independent purpose or effect that would allow punishment as a separate offense.

*State v. Arndt*, 194 Wn.2d 784, 816, 453 P.3d 696 (2019) (footnote omitted).

Express or implicit legislative intent "may be clear on the face of the statute, found in the legislative history, the structure of the statutes, the fact the two statutes are directed at eliminating different evils, or any other source of legislative

2

intent." *Freeman*, 153 Wn.2d at 773. Where the legislature did not clearly intend to allow separate punishments, we use the *Blockburger* test, the merger doctrine, and the independent purpose or effect test as tools of statutory construction. *Id.* at 776, 777-79. In using these tools, we "consider the elements of the crimes as charged and proved, not merely as the level of an abstract articulation of the elements." *Id.* at 777.

As the majority correctly recognizes, there is no express statutory language in either the felony murder statute, RCW 9A.32.030(1)(c), or the first degree robbery statute, RCW 9A.56.200(1), to indicate that "the legislature expressly told us that both punishments are permissible." *State v. Muhammad*, 194 Wn.2d 577, 617, 451 P.3d 1060 (2019) (plurality opinion) (Gordon McCloud, J., opinion); majority at 6. Thus, this step counsels in favor of holding there is a double jeopardy violation.

Next, we consider the "closely related" *Blockburger* test and merger doctrine. *Muhammad*, 194 Wn.2d at 618 (Gordon McCloud, J., opinion). Both tests are applied when the same conduct is used to prove violations of multiple criminal provisions, and both shed light on legislative intent as to whether the two convictions should be treated as the same offense for double jeopardy purposes.

The *Blockburger* test provides that convictions under two provisions are not the same offense if "'each provision requires proof of a fact which the other does

3

not.'" *State v. Calle*, 125 Wn.2d 769, 778, 888 P.2d 155 (1995) (quoting *Blockburger*, 284 U.S. at 304). The majority correctly recognizes that applying the *Blockburger* test would require us to hold there is a double jeopardy violation here "because Knight's felony murder charge required the jury finding that Knight committed a robbery against James Sanders." Majority at 6.

Finally, the merger doctrine provides that "when the degree of one offense is raised by conduct separately criminalized by the legislature, we *presume* the legislature intended to punish both offenses through a greater sentence for the greater crime." *Freeman*, 153 Wn.2d at 772-73 (emphasis added). The majority correctly notes that this presumption would ordinarily require us to hold Knight's separate convictions for the robbery and felony murder of James Sanders violate double jeopardy. Majority at 7. However, the majority goes on to engage in independent fact-finding to determine that in this case, there is no double jeopardy violation because these two offenses had independent effects.

The independent purpose or effects test relied on by the majority operates as an "exception" to the merger doctrine; it is not the ordinary rule. *Arndt*, 194 Wn.2d at 819. Moreover, it cannot undermine controlling Supreme Court precedent holding that where a greater and lesser offense each involve the same victim and act, the greater offense is "by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." *Brown v. Ohio*, 432 U.S.

4

161, 168, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). Nevertheless, the majority contends that there were two distinct acts here because the robbery of James Sanders was "completed" when his ring was taken from his hand, while his murder served the independent effect of facilitating the attempted robbery from the family safe. Majority at 8.

This view directly contradicts the jury instructions, which required the jury to find "[t]hat the defendant or an accomplice caused the death of James Sanders, Sr[.], *in the course of or in furtherance* of" the robbery of James Sanders. Clerk's Papers (CP) at 336 (emphasis added). They were not given the option of finding that the murder was "in immediate flight" *from* the robbery. RCW 9A.32.030(1)(c). They were not instructed that the felony murder charge was based on the attempted robbery of the safe, as opposed to the robbery of the ring. Thus, the instructions allowed the jury to find that the robbery of James Sanders's ring was *not* completed at the time he was murdered because the murder was committed "in the course of or furtherance of" that same robbery. This ambiguity must be construed in Knight's favor. *Kier*, 164 Wn.2d at 811-14; *State v. Whittaker*, 192 Wn. App. 395, 416-17, 367 P.3d 1092 (2016). In concluding otherwise, the majority impermissibly substitutes its view of the facts for the findings of the jury.

5

In addition, the majority contends that any ambiguities that could have resulted from the jury instructions were clarified during the State's closing argument, even though the majority acknowledges that "[t]he State, concededly, was unclear when discussing the felony murder count and which robbery applied to that count." Majority at 11. Our precedent consistently states that in order to be effective, the State's election of particular acts to support particular charges in closing argument must be made "clearly and explicitly." *State v. Carson*, 184 Wn.2d 207, 228, 357 P.3d 1064 (2015). I cannot understand how the State can simultaneously be concededly unclear *and* clear and explicit. I would therefore hold that any ambiguities in the jury's verdicts must be interpreted in Knight's favor, in accordance with our precedent.

Thus, I would hold that based on the charges as proved to the jury, the State has not overcome the presumption that the robbery of James Sanders merges with the felony murder of James Sanders. I would therefore affirm the Court of Appeals on this issue and remand for the robbery conviction to be vacated.

B.     Knight's separate convictions for the robbery and assault of Charlene
        Sanders violate the constitutional prohibition on double jeopardy

Knight also claims that the second degree assault of Charlene Sanders merges with the first degree robbery of Charlene Sanders. The majority refuses to reach the merits of this claim because it was raised and rejected on direct appeal. I

6

would reach the merits and hold that the assault and robbery of Charlene Sanders merge, so the assault conviction must be vacated.

> 1.     In the interests of justice, we should revisit this issue on the merits

Because a personal restraint petition (PRP) is not a substitute for direct appeal, "[t]he petitioner in a personal restraint petition is prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004) (footnotes omitted). The majority holds that the interests of justice do not require relitigation of Knight's claim that her convictions for the robbery and assault of Charlene Sanders violate double jeopardy because that issue "was fully litigated on the merits and disposed of on direct appeal." Majority at 12. However, in determining whether the interests of justice require relitigation of a previously determined issue, we do not rely on an "'exhaustive'" list of criteria. *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688-89, 717 P.2d 755 (1986) (quoting *Sanders v. United States*, 373 U.S. 1, 17, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963)). Instead, we must remain aware that "'the test is "the ends of justice" and it cannot be too finely particularized.'" *Id.* (quoting *Sanders*, 373 U.S. at 17). I would hold that intervening cases have clarified and refined the proper analysis of this issue, such that reconsideration on the merits is warranted.

While the majority is correct that there has not been any groundbreaking "intervening change in the law" since Knight's direct appeal, that is not the exclusive test to determine whether the interests of justice require relitigation. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001). We have previously revisited issues in the interests of justice based on intervening case law that gave us "an opportunity to refine" our analysis. *In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 489, 789 P.2d 731 (1990). Such intervening case law is present here.

Since Knight's direct appeal was decided, there have been intervening published opinions that clarify the standards for appellate review of double jeopardy claims that conflict with the analytical approach taken by the Court of Appeals when it considered Knight's claim direct appeal. Specifically, the court on direct appeal in this case interpreted the jury's ambiguous verdicts in the light most favorable to the *State*, concluding that because the evidence *could have* supported multiple convictions without violating double jeopardy, there was no double jeopardy violation. However, subsequent published opinions have held that ambiguous jury verdicts must be interpreted in the light most favorable to the defendant. *See Muhammad*, 194 Wn.2d 577; *Whittaker*, 192 Wn. App. 395. Where there has been a "refinement in our analytical approach to a legal issue . . . [w]hether the ends of justice would be served by reconsideration will depend upon

8

the nature of the issue raised, the extent to which the refinement constitutes a change in the law, and the seriousness of the consequences of error." *Jeffries*, 114 Wn.2d at 489 n.6. Those criteria are met here.

The nature of the issue is a double jeopardy claim, one of the few claims not subject to the one-year statutory time bar for collateral attacks. RCW 10.73.100(3). And in this case, Knight raised both of her double jeopardy claims at trial but raised only the claim regarding Charlene Sanders on appeal. Considering the merits of her claim regarding James, but not Charlene, creates a negative incentive to strategically forgo issues on appeal, at least for double jeopardy and other claims that are exempt from the statutory time bar for collateral review. Otherwise, forgone claims (such as the double jeopardy claim relating to James Sanders) will be considered on the merits, while issues properly raised on appeal (such as the double jeopardy claim relating to Charlene Sanders) will not.

In addition, while the refinements in double jeopardy analysis did not completely change the law, they have changed the approach appellate courts have taken to claims such as Knight's. The Court of Appeals' decision on Knight's double jeopardy claim as to James Sanders demonstrates this changed approach, as do several unpublished appellate decisions issued after Knight's direct appeal. *E.g.*, *State v. Anderson*, No. 75834-9-I, slip op. at 5 (Wash. Ct. App. July 30, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/758349.PDF; *State v.*

*Maynor*, No. 70858-9-I, slip op. at 7-8 (Wash. Ct. App. Oct. 12, 2015)

(unpublished), http://www.courts.wa.gov/opinions/pdf/708589.pdf.  And the

consequences of error are severe, both for Knight, who has a conviction on her

record that violates the constitutional prohibition on double jeopardy, and for

future litigants, who cannot be sure which line of double jeopardy cases a court

will follow in assessing their claims.

Thus, although this claim does not fit neatly into any of the categories for

revisiting claims that were rejected on direct appeal, the interests of justice counsel

in favor of reaching the merits, if for no other reason than to clarify inconsistencies

in the case law.

2. Separate punishments for the robbery and assault of Charlene Sanders
violates the prohibition on double jeopardy

The merits of Knight's double jeopardy claim as to the robbery and assault

of Charlene Sanders depend very much on the way those offenses were charged

and proved to the jury.  The evidence and the jury instructions provided several

alternative methods to convict, and the jury was not asked to elect between them.

Depending on what the jury actually found, the second degree assault of Charlene

would merge with the first degree robbery of Charlene, and, as noted above, we

must interpret the jury's ambiguous verdict in Knight's favor.  I would therefore

grant relief on this claim and remand for the sentencing court to vacate Knight's

conviction for the assault of Charlene.

Returning to the four-part analysis of double jeopardy claims discussed

above, there is no express language in either the first degree robbery statute, RCW

9A.56.200, or the second degree assault statute, RCW 9A.36.021, indicating that

the legislature intended to require separate punishments in all cases. We must

therefore turn to the offenses as charged and proved in this case to apply the

*Blockburger* test, the merger doctrine, and the independent purpose or effects rule.

In this case, to elevate the robbery charge to robbery in the first degree, the

jury was required to find either of the following: "(a) That in the commission of

these acts [of unlawfully taking personal property] the defendant or an accomplice

was armed with a deadly weapon; *or* (b) That in the commission of these acts the

defendant or an accomplice inflicted bodily injury." CP at 354 (emphasis added).

The jury was also instructed that in order to convict Knight of the second degree

assault of Charlene, they must find that "the defendant or an accomplice: (a)

intentionally assaulted Charlene Sanders and thereby recklessly inflicted

substantial bodily harm; *or* (b) assaulted Charlene Sanders with a deadly weapon."

CP at 353 (emphasis added). Based on this instruction, the jury could have

convicted Knight of second degree assault based on several acts, including putting

a gun to Charlene's head while her ring was stolen or kicking Charlene in the head

when she said there was no safe.

Both the trial court and the court on direct appeal rejected Knight's double

jeopardy claim based on the assumption that the jury convicted Knight of *first

degree robbery* because a gun was placed to Charlene's head while her ring was

taken, but convicted Knight of *assault* because Charlene was later kicked in the

head. *State v. Knight*, 176 Wn. App. 936, 954-55, 309 P.3d 776 (2013); 8

Verbatim Report of Proceedings (May 13, 2011) at 1090. If the jury had made

such a finding, this view would make sense because both the robbery and the

assault would require proof of a fact the other did not: the robbery would require

proof that during the robbery, the defendant or an accomplice was armed with a

deadly weapon, while the assault would require proof that during the assault, the

defendant or an accomplice inflicted substantial bodily harm. The offenses would

therefore be different in accordance with the *Blockburger* test and would not

merge, indicating the legislature intended separate punishments.

However, while the jury *could have* made such a finding based on the

evidence, they did not, and they were not asked to do so. They were instructed in

the alternative and not required to choose between the alternative bases for

conviction. Published decisions issued after Knight's direct appeal make it clear

that appellate courts assessing double jeopardy claims must view ambiguous jury

verdicts in favor of the defendant, not the State. For instance, in contrast to Division Two's analysis in this case, Division One in *Whittaker* recognized that where the jury could have convicted on alternative bases, all of which were supported by the evidence, "[w]e simply cannot exclude the possibility that the jury convicted on the basis" that would prevent a double jeopardy violation. 192 Wn. App. at 416. Likewise, this court in *Muhammad* recognized that ambiguity in the legislature's intent to impose separate punishments must be interpreted in the defendant's favor. 194 Wn.2d at 622 (Gordon McCloud, J., opinion). Neither of these opinions made new law, but both show that the court on direct appeal in Knight's case took the wrong approach by interpreting the ambiguous verdicts in the light most favorable to the State.

Based on the evidence presented, the jury could have convicted Knight of robbery based on the act of placing a gun to Charlene's head while her ring was taken and could have convicted Knight of assault based on the same act. Interpreted this way, Knight's convictions for the robbery and assault of Charlene violate the prohibition on double jeopardy because the assault was necessary to elevate the robbery to a first degree offense. The merger doctrine thus requires us to presume that the legislature intended to punish both offenses through the robbery conviction, and there was no independent purpose or effect for the assault that would overcome the presumption.

13

I would therefore grant Knight's PRP on her double jeopardy claim regarding Charlene Sanders and remand to the sentencing court to vacate the assault conviction.

## CONCLUSION

Knight's role in the home invasion robbery that resulted in the death of James Sanders undoubtedly warrants significant punishment. However, that punishment must be limited to what the legislature intended. Based on the way Knight's convictions were proved in this case, we should hold that the legislature intended for the murder and robbery of James Sanders to be punished only through the sentence for the murder conviction, rather than separate convictions for both the murder and the robbery. Likewise, the robbery and assault of Charlene Sanders must both be punished through the sentence for the robbery conviction. I would therefore remand to the trial court to vacate Knight's convictions for the robbery of James Sanders and the assault of Charlene Sanders. I respectfully dissent.

14

Yu, J.

González, J.

Gordon McCloud, J.

Montoya-Lewis, J

15