IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  37449-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL ANTHONY KUEST, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury convicted Michael Kuest on one count of rape of Lorna

Baker, two counts of assault on Baker, and one count of witness tampering.  Lorna Baker

is a pseudonym.  The superior court dismissed one of the assault convictions on the

conclusion that it merged with the rape conviction.  On appeal, Michael Kuest argues the

second assault conviction should also merge with the rape conviction.  We disagree.  We,

however, remand for resentencing because of a vague and void community custody

condition and because the sentencing court included a conviction for possession of a

controlled substance in Kuest's offender score.

FACTS

We remove the facts from trial testimony.  This prosecution arises from the

alleged sexual assault of Lorna Baker by defendant Michael Kuest on June 3, 2019.

According to Lorna Baker, she and Michael Kuest, before June 3, 2019, engaged in an ongoing sexual relationship that involved frequent use of methamphetamine. On June 3, Baker texted Kuest and inquired whether he desired sex with her, to which he responded affirmatively. Baker journeyed to Kuest's location. She judged that Kuest had been drinking. Kuest and Baker entered a shed on the property and engaged in heavy petting. Baker then left the shed to visit with her son and his wife.

Lorna Baker later returned to the shed. According to Baker, Michael Kuest then grabbed her hair, hit her on the top of her head, and forced her to perform oral sex on him. Kuest choked her until she lost consciousness. After she regained consciousness, she found her pants removed, her underwear ripped off, and her legs spread open. Kuest was slapping her vagina with a jar. While he bent Baker and kinked her neck, Kuest attempted to insert his penis into her vagina. Immediately thereafter, he rolled her over and attempted to insert his penis and the jar into her anus.

Lorna Baker freed herself from Michael Kuest's grasp and fled to the door of the shed. Kuest grabbed and dragged her, punched her in the head, and bit her. Baker again freed herself and this time exited the shed. A pursuing Kuest picked her up by the hair and punched her in the face. After Baker fell to the ground, Kuest kicked and stomped her torso with his cowboy boots. He spat on her. Baker rose from the ground and ran, but Kuest threw an object at her. She fell again to the ground. Baker rose again and

2

crossed the street to a neighbor's residence.

Michael Kuest's trial testimony disagreed with Lorna Baker's story. Kuest testified that, when Baker returned to the shed after visiting her son and the son's wife, she voluntarily performed oral sex and asked whether she was "'better than [Kuest's] girlfriend?'" Report of Proceedings (RP) (Jan. 31, 2020) at 443. When Kuest responded in the negative, Baker bit Kuest's penis. She flailed with such force against the hard floor of the shed that she bruised herself. Kuest grabbed Baker's hair and shoved her. Baker ran around the shed while flinging insults at Kuest. She threatened Kuest with false rape accusations. During his testimony, Kuest denied that he removed Baker's pants and averred that she left the shed fully clothed. According to Kuest, Baker crawled out of the shed in order to convince the neighbor of a rape.

Adams County officers responded to the location of Lorna Baker, who lay badly beaten and naked in the outdoors.

PROCEDURE

The State of Washington charged Michael Kuest with rape in the first degree, three counts of assault in the second degree, and tampering with a witness. The State also alleged that Kuest committed the rape with deliberate cruelty. The prosecution proceeded to a jury trial.

The prosecutor began closing argument with an overview of the five charges brought against Michael Kuest:

3

> So you have five charges. Count 1, rape in the 1st degree, with an aggravator of deliberate cruelty. And then you have three counts of assault in the 2nd degree, and they're for different things that the defendant did. Count 2 is for strangulation. Count 3 is for the deadly weapon. Count 4 is for the broken ribs. And Count 5 is for witness tampering.

RP (Jan. 31, 2020) at 491. During closing, the prosecutor argued that the jury should convict on count 4, the third count of assault, based on Lorna Baker's testimony that Kuest kicked her torso with his cowboy boots. Police body camera footage depicted Kuest wearing cowboy boots when arrested, and a health care provider testified to Baker's fractured ribs.

Jury instruction 27 required the jury to find that Michael Kuest "intentionally assaulted [Lorna Baker] by strangulation" in order to convict on count 2. Clerk's Papers (CP) at 213. The prosecution did not focus on count 2 during closing argument. Jury instruction 28 required the jury to find that Kuest "assaulted [Lorna Baker] with a deadly weapon" in order to convict on count 3. CP at 214. In closing, the prosecutor argued to the jury that it should convict on count 3 based on evidence that Kuest hit Baker with a plywood board. Jury instruction 29 required the jury to find that Kuest "recklessly inflicted substantial bodily harm on [Lorna Baker]" in order to convict on count 4. CP at 215.

The jury convicted Michael Kuest of rape in the first degree. The jury further found that the rape had been committed with deliberate cruelty toward Lorna Baker. The jury returned a guilty verdict on the count 2 and count 4 assault charges. The jury

4

acquitted found Michael Kuest on the count 3 assault charge. The jury found Kuest guilty on the count 5 charge of tampering with a witness.

Before sentencing, the prosecutor agreed that the count 2 assault should merge into the rape charge since Michael Kuest's strangulation of Lorna Baker furthered the rape and helped to prove an element of first degree rape. The State argued that the count 4 assault conviction should not merge with the rape because Kuest's kicking of Baker in the ribs constituted a distinct and separate injury from the strangulation and rape and occurred after the rape. The sentencing court agreed with the prosecutor that count 2 merged, while count 4 did not.

The superior court sentenced Michael Kuest to 240 months' confinement. The calculation of his offender score included an earlier conviction for possession of a controlled substance. The court also entered a community custody condition requiring that Kuest "not enter drug areas as defined by court or CCO [community correction officer]." CP at 289.

## LAW AND ANALYSIS

### Merger of Count 4 Assault

Michael Kuest first argues that his conviction on count 4 for assault in the second degree should merge with his rape conviction because the crimes were continuous. The State disagrees. The State highlights that the prosecutor argued that the stomping with

boots formed the facts behind count four and those facts occurred after completion of the

rape. We agree with the State.

Double jeopardy protects defendants from conviction for the same offense twice.

U.S. CONST. amend. V; WASH. CONST. art. I, sec. 9. The merger doctrine arises from

this constitutional protection.

> [T]he merger doctrine is a rule of statutory construction which only
> applies where the Legislature has clearly indicated that in order to prove a
> particular degree of crime (*e.g.*, first degree rape) the State must prove not
> only that a defendant committed that crime (*e.g.*, rape) but that the crime
> was accompanied by an act which is defined as a crime elsewhere in the
> criminal statutes (*e.g.*, assault or kidnapping).

*State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983).

Convictions that otherwise appear to merge will not merge if the accompanying

crime involved an injury "separate and distinct from and not merely incidental to the

crime of which it forms an element." *State v. Johnson*, 92 Wn.2d 671, 680, 600 P.2d

1249 (1979). This rule of nonmerger focuses on whether the facts establish an

independent purpose or effect of the accompanying crime. *State v. Freeman*, 153 Wn.2d

765, 779, 108 P.3d 753 (2005). The rule does not apply merely because a defendant used

more violence than necessary to accomplish the crime. *State v. Freeman*, 153 Wn.2d

765, 779 (2005).

The Washington Supreme Court most recently applied the merger doctrine in *In re*

*Personal Restraint of Knight*, 196 Wn.2d 330, 473 P.3d 663 (2020). Three accomplices

6

entered the victims' residence, held the victims at gunpoint, and appropriated their wedding rings. After taking the rings, the accomplices demanded the location of a safe within the house. One victim agreed to provide the safe combination, but then broke free from restraints and was fatally shot. The Supreme Court considered whether a murder charge merged with a robbery charge, when robbery requires "unlawfully tak[ing] personal property from the person of another . . . by the use or threatened use of immediate force." RCW 9A.56.190. The Court reasoned that the robbery ended when the accomplices removed the rings from the victims. The Court ruled that the murder furthered a second, distinct robbery of the contents of the safe and did not merge.

Returning to Michael Kuest's appeal, a person commits rape in the first degree or in the second degree when he or she engages in sexual intercourse with another person by forcible compulsion. RCW 9A.44.040(1). Rape in the first degree differs from rape in the second degree as the former requires forcible compulsion by use of a deadly weapon, kidnapping, or infliction of serious physical injury. RCW 9A.44.040; RCW 9A.44.050. An assault conviction will merge with a rape conviction when the assault effectuated the rape and had no independent purpose or effect. *State v. Williams*, 156 Wn. App. 482, 495, 234 P.3d 1174 (2010).

The unit of prosecution for a rape conviction is an act of sexual intercourse. *State v. Tili*, 139 Wn.2d 107, 119, 985 P.2d 365 (1999). Chapter 9A.44 RCW defines "sexual intercourse." The term:

7

(a) has its ordinary meaning and occurs upon any penetration, however slight, and
(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and
(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

RCW 9A.44.010(1).

Michael Kuest argues that the jury could have considered Lorna Baker's broken ribs from the stomping as the serious physical injuries that formed an element for first degree rape and thus the conviction for the assault by boots should merge. The "substantial bodily harm" prong of second degree assault requires the State to prove that a defendant intentionally assaulted another and thereby recklessly inflicted substantial bodily harm. RCW 9A.36.021(1)(a).

Washington case law reads:

"When the prosecution presents evidence of multiple acts of like misconduct, any one of which could form the basis of a count charged, either the State must elect which of such acts is relied upon for a conviction or the court must instruct the jury to agree on a specific criminal act."

*In re Personal Restraint of Knight*, 196 Wn.2d 330, 340 (2020) (quoting *State v. Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007)). The State may elect which acts form the basis for a charge during closing argument as long as the election clearly

8

identifies the particular acts on which charges are based. *In re Personal Restraint of Knight*, 196 Wn.2d at 340; *State v. Carson*, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015).

The prosecuting attorney, in Michael Kuest's prosecution, argued at closing that the jury should find Kuest guilty on count 4 because of the kicking that broke Lorna Baker's ribs. Thus, the prosecutor elected to base the count 4 assault charge on the kicking injuries. Baker testified as to the time at which Kuest kicked her in the torso. According to Baker, Kuest kicked and stomped her in the torso after she exited the shed, by which time all sexual intercourse had ceased according to both her and Kuest's testimony. Because the jury could credit Baker's testimony and find that the assault happened after completion of sexual intercourse, the kicking did not further the rape. Count 4 does not merge with the rape conviction.

Community Custody Conditions

Michael Kuest challenges, as unconstitutionally vague, community custody condition 22, which excludes Kuest from "drug areas as defined by court or CCO." CP at 289. The State concedes this assignment of error. We accept the State's concession.

We review community custody conditions for abuse of discretion. *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021). The sentencing court may not impose an unconstitutional condition of community custody. *State v. Johnson*, 197 Wn.2d 740, 744 (2021). A community custody condition may be challenged for the first time on appeal. *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).

9

Due process under the Fourteenth Amendment to the U.S. Constitution and article I, section 3 of the Washington Constitution prohibits vague laws. *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A law is vague if it (1) fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement. *State v. Bahl*, 164 Wn.2d 739, 752-53 (2008).

The Washington Supreme Court has found community custody conditions unconstitutionally vague when the terms used in the conditions are themselves vague. In *State v. Bahl*, the Supreme Court ruled that a prohibition on accessing or possessing "pornographic materials" was unconstitutionally vague. In addition, according to the Court, allowing Bahl's community corrections officer to assess what constitutes pornography exacerbated the vagueness problem. If an officer needed to make that judgment call, the term failed to provide ascertainable standards for enforcement.

Michael Kuest lacks clear notice of how the community custody condition prohibiting him from entering "drug areas" will be applied by a community custody officer. The term "area" itself is exceedingly vague. A geographical area may be defined as "any particular extent of space or surface" including "an expanse or tract of the earth's surface," "a section, district, or zone of a town or city," or "a region or territory including and surrounding a city, consisting of a large part of a state or country or several states or

10

countries, or embracing an entire continent or parts of more than one continent."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 115 (3d ed. 1993).

Offender Score

Finally, Michael Kuest argues that his prior conviction for possession of a

controlled substance is void under *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521

(2021) and should not be included in his offender score. We agree.

In *State v. Blake*, the Washington Supreme Court held that Washington's strict

liability felony drug possession statute, former RCW 69.50.4013(1), violated the due

process clauses of the state and federal constitutions and is void. *State v. Blake*, 197

Wn.2d 170, 195 (2021). Void convictions cannot be included in an offender score. *State

v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). Although the

sentencing court imposed an exceptional sentence, the court must "have the standard

range clearly in mind" before departing. *In re Personal Restraint of Rowland*, 149 Wn.

App. 496, 508, 204 P.3d 953 (2009).

CONCLUSION

We affirm all of Michael Kuest's convictions. We remand to the superior court

for resentencing with instructions to strike the community custody condition excluding

Kuest from "drug areas as defined by this court or CCO" and to recalculate Kuest's

offender score without including his prior conviction for possession of a controlled

substance.

11

No. 37449-1-III
*State v. Kuest*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Staab, J.