[No. 20488-2-I. Division One. December 27, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS RAY VANVLACK, *Appellant*.

*Dori Jones* and *Marc Lampson* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

GROSSE, J.—Thomas VanVlack appeals his judgment and sentence for the crime of indecent liberties.

The victim, K.D., is severely retarded and has functioned at half her chronological age because of cerebral meningitis that she contracted at 9 years of age. In August of 1985, at age 18, she entered the Service Alternative Program and started living in an apartment complex with other program participants, counselors, and people who were not associated with the program. Her neighbors included VanVlack, his wife, and children.

On previous occasions K.D. and some of her friends had visited the VanVlack apartment to watch television. On August 8, 1985, K.D. went over to the VanVlack apartment. She was invited in by VanVlack who was caring for his son in the absence of his wife. After some conversation, VanVlack began feeling her breasts and crotch area. K.D. testified that he had sexual intercourse with her. Shortly thereafter, K.D.'s counselor knocked on the VanVlack door and VanVlack answered. She observed that K.D.'s pants were unbuttoned and slightly unzipped. VanVlack was charged with and convicted of indecent liberties.

VanVlack assigns error to the trial court's failure to give his proposed instruction on consent.[1] The instruction was

---

[1]The defense proposed the following instruction:

identical to the RCW 9A.44.010(6) definition of "consent" and to WPIC 45.04.[2] The trial court did not give the instruction because it believed that the issue in the case was not consent, but capacity to consent.

VanVlack was charged with violation of RCW 9A.44-.100(1)(d):

> A person is guilty of indecent. liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:
>
> . . .
>
> (d) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless.

■ The trial court was correct: Capacity to consent, not whether there was consent, is the crucial element of the crime charged.

> A trial court has discretion to decide how instructions are worded. Moreover, the instructions must be read as a whole and a requested instruction need not be given if the subject matter is adequately covered elsewhere in the instructions. Finally, instructions are sufficient if they permit counsel to satisfactorily argue his theory of the case to the jury.

(Citations omitted.) *State v. Ng*, 110 Wn.2d 32, 41, 750 P.2d 632 (1988). The instructions in this case were sufficient in the same manner as the instructions in *State v. Kester*, 38 Wn. App. 590, 686 P.2d 1081, *review denied*, 102 Wn.2d 1006 (1984), where error was also assigned for failure to give the Washington pattern consent instruction as a defense to a rape charge. The Court of Appeals noted that the instruction on the elements of rape included the element of "forcible compulsion", a term of common understanding opposite to "consent". The court reasoned that

---

"Consent means that at the time of the act of sexual contact, there are actual words or conduct indicating freely given agreement to have sexual contact."

[2]RCW 9A.44 was revised in 1988 after VanVlack's judgment and sentence was entered. Laws of 1988, chs. 145, 146. Those revisions left intact the language of the sections of RCW 9A.44 which is at issue in this opinion.

although the consent instruction was not given, the defendant had ample opportunity under the rape instruction to argue his theory of consent as a defense to the element of forcible compulsion. Here, VanVlack had ample opportunity to argue his theory to the jury under the "to convict" instruction and the instruction on the RCW 9A.44.030(1) defense that he reasonably believed the victim not mentally incapacitated.

The trial court is required to define technical words and expressions, but not expressions that are of ordinary understanding. *State v. Lyskoski*, 47 Wn.2d 102, 111, 287 P.2d 114 (1955). The term "consent" does not have a technical meaning different from the commonly understood meaning. "Consent" is ordinarily defined as "compliance or approval esp. of what is done or proposed by another . . . capable, deliberate, and voluntary agreement to or concurrence in some act or purpose implying physical and mental power and free action". *Webster's Third New International Dictionary* 482 (1981). This definition is substantially the same as the definition set forth in former RCW 9A.44-.010(6) and the pattern instruction. Consequently the trial court was not required to instruct the jury on the definition of consent.

VanVlack next assigns error to instruction 7 which read as follows:

> A person is incapable of consent by reason of being mentally defective if at the time of the offense the person is prevented from understanding the nature and consequences of the act of sexual contact whether that condition is produced by illness, defect, the influence of a substance, or from some other cause.

In the instant case, although there was also evidence of the victim's excessively compliant nature which is an aspect of her mental defect, the case went to the jury on the theory that she did not know the nature and consequences of the sexual act. In final argument the State contended that the victim was unable to understand the nature and consequences of the sexual act because she did not know where

babies came from and did not understand sexual contact. The defense countered by arguing that she knew about the sex act and knew the nature and consequences of the sexual act.

VanVlack argues that instruction 7 is the definition of mental incapacity, not a correct legal explanation of the concept of being incapable of consent by reason of being mentally defective. Former RCW 9A.44.100(1)(d) requires the State to prove that the victim was incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless. Former RCW 9A.44.010(3) defines "mental incapacity" as "that condition existing at the time of the offense which prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance or from some other cause".

A reviewing court has an obligation to read statutes as a whole and to attempt to avoid rendering meaningless a word or portion thereof. *In re Estate of O'Brien,* 109 Wn.2d 913, 749 P.2d 154 (1988). Because the Legislature did not define "mental defect", we use the common and ordinary meaning. "Mental" ordinarily means "of or relating to mind: as . . . relating to the integrated activity of an organism; Specif: relating to the total emotional and intellectual response of an organism to its environment". *Webster's,* at 1411. "Defect" is "an irregularity in a surface or a structure that spoils the appearance or causes weakness or failure". *Webster's,* at 591. Thus, in the context of former RCW 9A.44.100(1)(d), a "mental defect" is an irregularity in the emotional and intellectual response of a person to his environment which renders the person incapable of consent to sexual contact. With this definition in mind, we read former RCW 9A.44.010(6) as acknowledging that mental incapacity can be produced by an illness, defect, substance, or some other cause. We read former RCW 9A.44.100(1)(d) as requiring proof that there exists a mental defect that renders the victim incapable of consent, but not that the defect

must be one that prevents the victim from understanding the nature and consequences of sexual contact. Insofar as mental defects are concerned, former RCW 9A.44.010(6) requires proof of a mental defect that does render the victim incapable of understanding the nature and consequences of sexual contact and thus incapable of consent. Read together, these statutes require the State to prove that victims have mental defects rendering them incapable of consent either because they do not understand the nature and consequences of the acts, or because they are otherwise incapable.

The evidence in VanVlack's case supported either approach; the victim did not, as a result of mental defect, understand the nature and consequences of sexual contact, or was not capable of consent due to her excessively compliant nature which resulted from mental defect. Only the former theory was submitted to the jury. Since both could have been submitted, it would appear that VanVlack was not harmed by this instruction, but rather, received a benefit. There was no error. We affirm the judgment and sentence.

The remainder of this opinion has no precedential value. Therefore it will be filed for public record in accordance with the rules governing unpublished opinions.

SWANSON and WILLIAMS, JJ., concur.