IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81038-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRANDON EUGENE DOCKTOR, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Brandon Eugene Docktor appeals his jury convictions for second degree rape and indecent liberties by reason of incapacity. He argues prosecutorial misconduct, an improper jury instruction, ineffective assistance of counsel, and insufficient evidence warrant reversal. We conclude the record does not support Docktor's claims and affirm.

## FACTS

In March 2017, A.C. lived with her friend Emily Cavagna in a small trailer. On the evening of March 7, A.C. and Cavagna planned an outing at a bar. Cavagna invited former high school friend Brandon Docktor to join them. Samuel Harper, A.C.'s friend and romantic interest, also planned to meet them.

At the bar, A.C. met Docktor for the first time. After they were introduced, A.C. had little, if any, additional contact with Docktor. Instead, A.C. spent the

evening drinking beer and eating pizza with Harper.  Cavagna played pool and hung out with Docktor.

Cavagna, A.C., Harper, and Docktor left the bar to attend an "after-party." After approximately 45 minutes, A.C. and Harper left the party and went back to the trailer.  They smoked marijuana together and then went to sleep in the king-size bed normally shared by Cavagna and A.C.  A.C. slept on the far side of the bed curled up next to the wall.  Harper fell asleep behind her.

Sometime after 3:00 a.m. on March 8, Docktor and Cavagna returned to the trailer.  Cavagna allowed Docktor to stay the night but set "boundaries."  She told Docktor that "he was just there to sleep."  Cavagna and Docktor joined A.C. and Harper in the king-size bed.  Neither Harper nor A.C. appeared to wake up when they got in the bed.  Cavagna slept next to Harper with Docktor on her other side at the edge of the bed.

Harper woke early that morning and went to work.  When he left, the others all remained asleep in the same order on the bed—A.C. next to the wall, Cavagna in the middle, and Docktor on the other end.

Cavagna awoke sometime later and noticed Docktor had moved to the middle of the bed between her and A.C.  She saw Docktor pull down his pants and "start thrusting."  Cavagna rolled over and "pretended to be asleep."  She heard a sound "like a sigh" and then silence.  Then Cavagna heard A.C. ask for her in a "scared" tone of voice, followed by A.C. yelling, " 'Who the fuck are you' " at Docktor.

2

Docktor and Cavagna got out of bed. Cavagna asked Docktor to help her take down the nearby folding table. When he did, she removed the table leg, hit him over the head with it, and "told him to get out." Docktor quickly left the trailer. About 10 minutes later, Docktor texted Cavagna, saying, " 'Long story short just to let you know I don't think either one of us knew what was going on until that moment. So thanks for hitting me with the pole. I really appreciate it whether you believe it or not.' "

The next day, Cavagna called the police to report the incident. A.C. went to the hospital for a sexual-assault examination and recounted the events to the nurse. The State charged Docktor with one count of rape in the second degree and one count of indecent liberties, each count alleging that A.C. was incapable of consent.

At trial, Cavagna and Harper testified about the events detailed above. A.C. testified that she went to sleep "facing the wall" with Harper behind her and no one else in the bed. A.C. remembered having a sexual dream. She woke up still facing the wall with her shirt around her neck and someone lying behind her, touching her nipples. She thought Harper was the one touching her. She then felt the person initiate sexual intercourse. A.C. was "still . . . waking up" and "confused." When she reached back and felt short hair instead of Harper's long hair, she "jumped" away and yelled. A.C. testified she was in "complete shock" and tried to "process what happened."

Docktor's testimony was similar until he described the sexual encounter. Docktor testified he woke up and discovered Harper "was gone." Because he

3

had been uncomfortable on the edge of the bed, Docktor took the opportunity to move to the middle "to be more comfortable." He woke up and discovered that he had placed his "arm around [A.C.]." According to Docktor, A.C. "grabbed" his hand and "put it in between her legs."

Docktor said he was "curious" about whether A.C. wanted "to do sex stuff" and started rubbing A.C.'s vagina on the outside of her pants. Docktor testified that A.C. eventually reached back and touched his penis. He testified that they both took off their pants and then had sex. When defense counsel asked Docktor if he ever asked A.C. "for permission" to have sex, Docktor said he "did not." Docktor explained:

> I didn't feel like I needed permission because she had grabbed my hand, put it in between her legs, and when I started touching her she had pressed up against me. To me it seemed like that's what she wanted.

According to Docktor, they engaged in sex for about 30 minutes. When they stopped, A.C. looked at Docktor and asked who he was and then told him to get out. Docktor left the trailer "scared," "confused," and "completely in shock."

The jury convicted Docktor as charged. He received a concurrent standard-range sentence. Docktor appeals.

ANALYSIS

Prosecutorial Misconduct

Docktor claims the prosecutor committed misconduct by misstating the law of consent. According to Docktor, the State shifted the burden to him to prove that A.C. had the capacity to consent. We disagree.

4

To establish prosecutorial misconduct, a defendant must demonstrate that the conduct was both improper and prejudicial in the context of the entirety of the record and the circumstances at trial. State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). If the defendant objects at trial, he must show that the prosecutor's misconduct resulted in prejudice with a substantial likelihood of affecting the jury's verdict. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Arguments that shift or misstate the State's burden to prove guilt beyond a reasonable doubt constitute misconduct. State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).

The State charged Docktor with second degree rape and indecent liberties without forcible compulsion, alleging A.C. was unable to consent by reason of physical or mental incapacity. See RCW 9A.44.050(1)(b), .100(1)(b). Docktor asserted as an affirmative defense that he "reasonably believed" A.C. was not mentally incapacitated or physically helpless at the time of the offense. Docktor has the burden to prove this defense by a preponderance of the evidence. RCW 9A.44.030(1).

In closing argument, the prosecutor emphasized that the State has the burden of proving each charge beyond a reasonable doubt. She summarized the elements of each charge, discussed the facts, and argued that the State had met its burden.

The prosecutor then turned to Docktor's affirmative defense. She explained that "the defendant has asserted an affirmative defense" and "that's a burden he takes on." The prosecutor told the jury, "If you believe beyond a

reasonable doubt that [A.C.] was asleep when this — was not capable of giving consent . . . , I have met my burden.  He then has to prove to you . . . that he reasonably thought she was capable."

The prosecutor went on to discuss the events that occurred on March 7 and 8, 2017, that A.C. was asleep when Docktor arrived at the trailer, and that she did not know he was in the bed.  The prosecutor reiterated Docktor's argument that A.C. initiated sexual contact and asked the jury, "[I]s it reasonable that he thought she was awake and able to consent to him when she did that?"  The prosecutor argued:

> [Docktor's] version is he does not check at all to see if this woman is awake, conscious, and consenting.
> But the law in this state does impose that obligation on people when they have sex.  When someone has sex with another person, they have to make sure that that person is awake and conscious and able to consent.
> [DEFENSE COUNSEL]:    Objection, Your Honor.  The instruction says that he has to have a reasonable belief.  It doesn't say that he has to go through —
> THE COURT:    You may continue.
> I'll let you take the instructions as provided to you and apply them to the facts as you decide them.
> Go ahead.
> [PROSECUTOR]:    That is an obligation on people when they have sex, which is why there is a law that someone — it is [a] crime to have sex with someone who is incapable of consent.
> [A.C.] did not have the opportunity to consent here.  She didn't have the chance.

Docktor claims that the prosecutor's remarks are a misstatement of the law and have the effect of shifting the burden of proof to him regarding consent.  But "[w]e look at a prosecutor's comments in the context of the whole argument, the issues of the case, the evidence addressed in argument, and the instructions given to the jury."  State v. Scherf, 192 Wn.2d 350, 394, 429 P.3d 776 (2018).

6

When considered in context, the prosecutor's comments were clearly an attempt to refute Docktor's affirmative defense, for which he bore the burden of proof. Her argument focused on what she believed Docktor must prove to avail himself of that defense. Indeed, Docktor did not object on the ground that the State shifted its burden to him. Rather, he objected based on concern that the prosecutor exaggerated the evidence necessary to meet his burden to receive the benefit of the affirmative defense.

The prosecutor explicitly told the jury throughout closing argument that the State has the burden to prove lack of capacity. Additionally, the jury instructions accurately explained the burdens of proof. The court instructed the jury that the State has the burden of proving each element of the crimes beyond a reasonable doubt. And the court provided proper to-convict instructions for second degree rape and indecent liberties without forcible compulsion. Those instructions established the elements of the crimes that the State was obligated to prove beyond a reasonable doubt. Finally, the court instructed the jury that Docktor had the burden of proving his defense by a preponderance of the evidence. These instructions, taken as a whole, accurately portrayed the burdens of proof. We presume the jury follows the court's instructions. Emery, 174 Wn.2d at 766.

Viewed in the context of the entire record, the prosecutor's statements did not improperly shift the burden of proof. We conclude there was no misconduct.

Jury Instruction

At trial, Docktor requested the court instruct the jury as to the definition of "consent" and proposed the pattern instruction which states, "Consent means that at the time of the act of sexual intercourse or contact, there are actual words

7

or conduct indicating freely given agreement to have sexual intercourse or contact." See 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 45.04 (4th ed. 2016) (WPIC). The State expressed concern about the instruction but the trial court acquiesced and gave the instruction as requested.

Docktor now claims that the trial court erred by giving the instruction. He argues that a consent instruction is never appropriate in a prosecution for second degree rape. We disagree.

We review alleged jury instruction errors de novo. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). "Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law." Barnes, 153 Wn.2d at 382. If a jury instruction correctly states the law, the trial court's decision to give the instruction will not be disturbed absent an abuse of discretion. State v. Aguirre, 168 Wn.2d 350, 364, 229 P.3d 669 (2010).

Docktor relies on the comment to WPIC 45.04 and State v. W.R., 181 Wn.2d 757, 767 n.3, 336 P.3d 1134 (2014), to support his claim that the court erred in giving the consent instruction. The comment to WPIC 45.04 states, "An instruction on consent is generally not appropriate in prosecutions for first or second degree rape." The comment cites a footnote from W.R. that states, "It is not necessary to add a new instruction on consent simply because evidence of consent is produced." 181 W.2d at 767 n.3.

W.R. is distinguishable from this case. W.R. pertains to a conviction of rape in the second degree by forcible compulsion. 181 Wn.2d at 761. In cases of forcible rape, the burden to prove force, which necessarily includes lack of consent, is always on the State. An instruction on consent in such a case poses a danger of confusing the jury about the burden of proof. See generally W.R., 181 Wn.2d at 763-67. Docktor was not charged with forcible rape. His reliance on W.R. is misplaced.

Docktor argues that it is also error to instruct a jury on consent in a prosecution for second degree rape of a victim who is incapable of consent. He cites State v. VanVlack, 53 Wn. App. 86, 765 P.2d 349 (1988), in support of his position. In VanVlack, the court concluded that it is not necessary to instruct the jury on the definition of "consent" in a prosecution for second degree rape based on incapacity. VanVlack, 53 Wn. App. At 87-88. It reasoned that "[c]apacity to consent, not whether there was consent, is the crucial element of the crime charged." VanVlack, 53 Wn. App. at 88. Accordingly, the court determined that it was not error for the trial court to refuse to give a consent instruction. VanVlack, 53 Wn. App. at 88-89.

However, VanVlack does not stand for the proposition that a consent instruction is never appropriate in a case alleging rape by reason of incapacity. Rather, the court concluded that it was not error to fail to give the instruction under the circumstances of that case. VanVlack, 53 Wn. App. at 88-89.

Jury instructions must properly inform the jury of the applicable law and allow the parties to argue their theories of the case. See Barnes, 153 Wn.2d at

382. Here, the consent instruction was offered to assist Docktor in arguing his theory of the case—that he reasonably believed A.C. had the capacity to consent and that she did affirmatively consent to the sexual contact through her conduct. The instruction was not misleading and properly informed the jury how to assess whether conduct constitutes consent. We conclude that under the circumstances of this case, the trial court did not abuse its discretion by instructing the jury on the definition of "consent."

Ineffective Assistance of Counsel

Docktor argues he received ineffective assistance of counsel because his attorney proposed the consent instruction that he now contends was error. To succeed on a claim of ineffective assistance of counsel, the defendant must demonstrate defense counsel's representation fell below an objective standard of reasonableness and the deficient representation resulted in prejudice. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Courts engage in a strong presumption of effective representation. McFarland, 127 Wn.2d at 335. "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

Here, counsel's performance was not deficient. As discussed above, counsel's proposal of the consent instruction was not inconsistent with the law. Additionally, the consent instruction directly related to counsel's trial strategy. Docktor's defense focused on the claim that he reasonably believed that A.C.'s actions indicated consent. Counsel relied on the instruction to argue that A.C.

10

acted consistently with the definition of "consent." Docktor's claim of ineffective assistance of counsel is without merit.

Sufficiency of the Evidence

Docktor alleges the State failed to present sufficient evidence of A.C.'s mental incapacity at the time of the assault. We conclude the State provided sufficient evidence that A.C. was incapable of consent by reason of being physically helpless.

"Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt." State v. DeVries, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences therefrom. DeVries, 149 Wn.2d at 849. Review for sufficiency of the evidence is highly deferential to the jury's decision, including issues of credibility, persuasiveness, and conflicting testimony. State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

Under RCW 9A.44.050(1)(b), a person is guilty of rape in the second degree by engaging in sexual intercourse with another person "[w]hen the victim is incapable of consent by reason of being physically helpless or mentally incapacitated." In State v. Al-Hamdani, 109 Wn. App. 599, 601, 36 P.3d 1103 (2001), we concluded that " 'mental incapacity' and 'physical helplessness' are not alternative means within the second degree rape statute." Rather, "these terms provide an understanding of ways in which the victim is incapable of giving

consent to sexual intercourse." Al-Hamdani, 109 Wn. App. at 601. As a result, the State need only provide sufficient evidence of either mental incapacity or physical helplessness. RCW 9A.44.050(1)(b).[1]

In accordance with RCW 9A.44.010(5), the jury instructions defined "physically helpless" as "when the person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." This court has equated the state of sleep with physical helplessness. See State v. Mohamed, 175 Wn. App. 45, 58-59, 301 P.3d 504 (2013); State v. Puapuaga, 54 Wn. App. 857, 861, 776 P.2d 170 (1989).

In his closing argument, Docktor conceded that A.C. was asleep at the time of the encounter. Defense counsel stated, "[H]onestly all of the testimony is that she probably was asleep at the time," and the State has "probably . . . proved that [A.C.] wasn't awake and that [Docktor] had sex with her." Sufficient evidence supports a rational trier of fact concluding beyond a reasonable doubt that A.C. was incapable of giving consent to sexual intercourse because she was physically helpless.

---

[1] The crime of indecent liberties includes similar language. RCW 9A.44.100(1)(b) provides:

> A person is guilty of indecent liberties when he or she knowingly causes another person to have sexual contact with him or her or another . . . [w]hen the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless.

Therefore, the use of mental incapacity and physical helplessness as multiple ways of understanding incapacity, rather than as alternative means, should also apply to proof of indecent liberties. See Al-Hamdani, 109 Wn. App. at 601.

We affirm the jury convictions for second degree rape and indecent liberties by reason of incapacity.

_____

Brennan, J

WE CONCUR:

_____       _____

Mann, C.J.