## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54114-9-II |
| Respondent, | |
| v. | |
| LOGAN HUGH HUMPHREY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Logan H. Humphrey appeals his convictions for second degree rape and second degree assault with sexual motivation.  Humphrey argues that the trial court erred by not giving jury instructions on the State's burden to prove lack of consent and on the definition of consent.  Humphrey also argues that the prosecutor committed prosecutorial misconduct during closing arguments by giving the jury their personal opinion.  Alternatively, Humphrey argues that he received ineffective assistance of counsel because his counsel failed to object to the prosecutor's arguments.  Humphrey further argues that even if these alleged errors individually are not prejudicial, the cumulative effect of the errors kept him from receiving a fair trial.  Also, Humphrey argues that his convictions for second degree assault with sexual motivation and second degree rape violate double jeopardy.  The State concedes that the convictions violate double jeopardy.

We hold that the trial court did not err in not giving jury instructions on the State's burden to prove lack of consent and on the definition of consent.  We also hold that the prosecutor did not commit prosecutorial misconduct.  Because no prosecutorial misconduct occurred, defense counsel's performance was not deficient and Humphrey did not receive ineffective assistance of

counsel. We further hold that the cumulative error doctrine does not apply because no errors occurred. Finally, we agree with Humphrey and the State that his convictions for second degree assault with sexual motivation and second degree rape violate double jeopardy. Accordingly, we affirm Humphrey's conviction for second degree rape, but we remand to the trial court to vacate the conviction for second degree assault with sexual motivation.

FACTS

The State charged Humphrey with first degree rape, or second degree rape in the alternative; first degree kidnapping; and second degree assault with sexual motivation. The charges arose from an incident in which Humphrey held a knife to G.P.T.,[1] led her into the woods, and sexually assaulted her.

A.    TESTIMONY AT TRIAL

At the jury trial, G.P.T. and Humphrey both testified and had divergent versions of what happened. G.P.T. testified that she went for a run alone on the night of July 27, 2017. While she was running, Humphrey approached her from behind with a knife and covered her eyes. Humphrey led G.P.T. towards the bushes while still covering her eyes and "hugging" her with his arms. 3 Verbatim Report of Proceedings (VRP) (June 6, 2019) at 608. G.P.T. did not try to pull away from him because Humphrey was taller than her and she was "very scared." 3 VRP (June 6, 2019) at 609. Humphrey raped G.P.T. by penetrating her mouth and vagina with his penis, and he penetrated her rectum with his fingers and attempted to penetrate her rectum with his penis.

_____

[1] We use G.P.T.'s initials to protect her privacy as a sexual assault victim.

G.P.T. also testified that after the assault, Humphrey told her to not say anything or call the police. After Humphrey left, G.P.T. walked to a store, where she called her husband. When her husband arrived, he called the police.

Humphrey's defense was that G.P.T. consented. Humphrey testified that he had previously met G.P.T. in early to mid-July 2017 on the same path where G.P.T. alleged the incident occurred. In this prior encounter, Humphrey testified that he and G.P.T. talked and flirted as they walked together on the path. Humphrey then stated that he saw G.P.T. again on July 27, 2017 in the same area. They again began talking as they walked together on the path. During the walk, Humphrey kissed G.P.T. "She was responsive" to the kiss, and they kissed "several more times." 5 VRP (June 11, 2019) at 1078. Humphrey asked her "if she wanted to fool around." 5 VRP (June 11, 2019) at 1080. G.P.T. told him that he was "crazy and giggled." 5 VRP (June 11, 2019) at 1080. Their interaction then became more "heated." 5 VRP (June 11, 2019) at 1081. Humphrey noticed a trail behind them and said to G.P.T., "[L]et's go over here." 5 VRP (June 11, 2019) at 1081. G.P.T. "playful[ly]" responded, "[W]hat for." 5 VRP (June 11, 2019) at 1081. They went down the trail together. Humphrey testified that he did not remember if he asked G.P.T. for oral sex verbally or just pressed on her shoulders, but G.P.T. did not say anything and performed oral sex.

Humphrey also testified that he told G.P.T. that he wanted to have sex with her. "She said something—something about her husband and finding out and—and I'm not sure what else." 5 VRP (June 11, 2019) at 1082. Humphrey thought she was worried about protection, so he told her that he had a condom. In response, G.P.T. started pulling her pants down. Humphrey and G.P.T. had penetrative sex. Humphrey testified that he believed G.P.T. was enjoying the interaction based on her conduct. At a certain point, Humphrey's condom broke. Humphrey told G.P.T. right away.

3

She started trembling and "sounded distressed," so Humphrey stopped. 5 VRP (June 11, 2019) at 1085. G.P.T. started crying and told Humphrey she wanted to go home. Humphrey asked if there was anything he could do but she said, "'No, just go, please.'" 5 VRP (June 11, 2019) at 1086. Humphrey testified that he went back to his car and drove home.

B.      JURY INSTRUCTIONS

After the close of testimony, the trial court discussed jury instructions with counsel. Humphrey provided the court with proposed jury instructions regarding the issue of consent. Humphrey proposed a jury instruction defining "consent":

> Consent means that at the time of the act of sexual intercourse or contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or contact.

Clerk's Papers (CP) at 66. The trial court did not give this proposed instruction.

Humphrey also proposed the following jury instruction:

> The State has the burden of proving beyond a reasonable doubt that consent was not given.

CP at 68. The trial court also did not give this proposed instruction.

Humphrey proposed another jury instruction regarding consent that stated:

> Evidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have sexual intercourse or sexual contact.

CP at 67. The trial court gave this proposed instruction to the jury.

No. 54114-9-II

The trial court also instructed the jury on the elements the State had to prove to convict the defendant of both first degree and second degree rape,[2] including that the defendant used "forcible compulsion" to have sex with G.P.T.  CP at 78, 81.

The trial court further instructed the jury on the definition of forcible compulsion:

> Forcible compulsion means physical force that overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to oneself or another person or in fear of being kidnapped or that another person will be kidnapped.

CP at 81.

---

[2]  The trial court gave the following "to convict" jury instruction for first degree rape:

> To convict the defendant of the crime of rape in the first degree, as charged in Count 1, each of the following four elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about July 27, 2017, the defendant engaged in sexual intercourse with [G.P.T.];
> (2) That the sexual intercourse was by forcible compulsion;
> (3) That the defendant (a) used or threatened to use a deadly weapon or what appeared to be a deadly weapon or (b) kidnapped [G.P.T.]; and
> (4) That any of these acts occurred in the State of Washington.

CP at 85.

The trial court also gave the following "to convict" jury instruction for second degree rape:

> To convict the defendant of the crime of rape in the second degree, as charged as an alternative to Count 1, each of the following three elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about July 27, 2017, the defendant engaged in sexual intercourse with [G.P.T.];
> (2) That the sexual intercourse occurred by forcible compulsion; and
> (3) That this act occurred in the State of Washington.

CP at 88.

C.      CLOSING ARGUMENTS AT TRIAL

During closing arguments, the State, when discussing the second degree assault with sexual motivation charge, argued that "the State believes that this has been proven beyond a reasonable doubt; that you could find [on] either prong, that she was assaulted with a deadly weapon or with the intent to commit rape." 6 VRP (June 12, 2019) at 1263. Later, when discussing the first degree kidnapping charge, the State argued that "[t]he State believes that this has all been found—proven beyond a reasonable doubt, and we would ask that you find the Defendant guilty of Count 2, kidnapping in the first degree." 6 VRP (June 12, 2019) at 1271.

Finally, the State asked the jury to find Humphrey guilty of either first or second degree rape. With regard to the element of use of a deadly weapon or kidnapping, the State argued that "[t]he State believes that [use of a deadly weapon or kidnapping] has been proven beyond a reasonable doubt." 6 VRP (June 12, 2019) at 1272. The State later argued that "the State alleges and believes has [sic] been proven beyond a reasonable doubt that at least three acts of sexual intercourse occurred." 6 VRP (June 12, 2019) at 1276. The State then repeated, "The State believes that all three have been proven beyond a reasonable doubt." VRP (June 12, 2019) 1276. In discussing what type of sex occurred, the State argued, "And so was there sex in the vagina? Was there sex in the anus? That's for you to decide. But the State believes that it has been proven beyond a reasonable doubt." 6 VRP (June 12, 2019) at 1277.

The State also argued that "[t]he State believes that every element of every charge has been proven beyond a reasonable doubt." 6 VRP (June 12, 2019) at 1280. The State then asked the jury to "return verdicts on all counts" and "convict the Defendant of rape, of kidnapping, and

assault." 6 VRP (June 12, 2019) at 1280. Humphrey made no objections during the State's closing arguments.

D.   JURY VERDICTS

The jury found Humphrey not guilty of first degree rape, but it found Humphrey guilty of the alternative crime of second degree rape. The jury also found Humphrey not guilty of first degree kidnapping. Finally, the jury found Humphrey guilty of second degree assault with sexual motivation.

Because Humphrey is a persistent offender, the trial court sentenced him to life without the possibility of early release.

Humphrey appeals.

ANALYSIS

A.   PROPOSED JURY INSTRUCTIONS FOR CONSENT

Humphrey argues that the trial court erred in not accepting his proposed jury instructions regarding consent because the proposed jury instructions regarding the State's burden to prove lack of consent and defining consent were necessary. We disagree.

1.      Proposed Jury Instruction Regarding State's Burden To Prove Lack Of Consent

Humphrey argues that the trial court erred in not accepting his proposed jury instruction regarding the State's burden to prove lack of consent. Humphrey contends that such an instruction was necessary because consent negates the element of forcible compulsion in first and second degree rape charges.

We review challenges to the adequacy of jury instructions de novo. *State v. Imokawa*, 194 Wn.2d 391, 396, 450 P.3d 159 (2019). Due process "requires that jury instructions adequately

convey to the jury that the State bears the burden of proving 'every element of the crime charged beyond a reasonable doubt.'" *Id.* (quoting *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002)). "'Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue [their] theory of the case.'" *Id.* at 396-97 (quoting *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999)).

"A defendant cannot be required to disprove any fact that constitutes the crime charged." *State v. Knapp*, 197 Wn.2d 579, 586, 486 P.3d 113 (2021). Jury instructions must make clear that the State bears the burden of disproving any defense a defendant may raise in negating an element of the crime charged. *Id.*

In *Knapp*, our Supreme Court addressed similar arguments that Humphrey now makes. In *Knapp*, the defendant was charged with second degree rape by forcible compulsion. *Id.* at 583. The defendant relied on the defense of consent. *Id.* at 583-84. The trial court instructed the jury using the updated Washington Pattern Instructions: Criminal (WPICs), which state, "'[E]vidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have [sexual intercourse.]'" *Id.* at 584 (some alteration in original) (quoting WPIC 18.25, at 304). The defendant argued that this instruction was "constitutionally inadequate because [the instruction] did not explicitly provide that the State bears the burden to prove lack of consent beyond all reasonable doubt." *Id.* at 587.

The *Knapp* court held that in the context of rape, consent and forcible compulsion "cannot coexist, so there is no reason to treat them as separate, independent elements." *Id.* at 590. Instead, "the State's burden to prove lack of consent is wholly contained within its burden to prove forcible

compulsion." *Id.* According to the court, including an instruction stating that the State had the burden to prove lack of consent would impermissibly add lack of consent as a separate element to the crime of second degree rape by forcible compulsion. *Id.* at 592-93. Thus, the jury instructions provided by the trial court were constitutionally adequate and made the State's burden clear. *Id.* at 590.

Here, *Knapp* controls. Humphrey was charged with first degree rape, or second degree rape in the alternative. The State asserted that Humphrey committed the rape through forcible compulsion, an essential element for both first and second degree rape, and the trial court instructed the jury on the definition of forcible compulsion. Like the defendant in *Knapp*, Humphrey argued the defense of consent. And, like in *Knapp*, the trial court instructed the jury that "[e]vidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have sexual intercourse of sexual contact." CP at 82. Humphrey argues that this instruction is inadequate and ambiguous because the jury would be unable to understand that the State bears the burden of disproving consent. But *Knapp* rejected this argument. 197 Wn.2d at 591-92. Thus, contrary to Humphrey's argument, the jury instructions here were adequate and made clear the State's burden of proof. *Id.* at 590. We follow the Supreme Court's decision in *Knapp* and hold that the trial court did not err in rejecting Humphrey's proposed jury instruction regarding the State's burden to prove lack of consent.

2. Proposed Jury Instruction Regarding The Definition of Consent

Humphrey argues that the trial court erred by not providing the jury with a definition of consent in its jury instructions.

We review the trial court's decision to not give a proposed jury instruction for abuse of discretion. *In re Det. of Pouncy*, 168 Wn.2d 382, 390, 229 P.3d 678 (2010). "Trial courts must define technical words and expressions used in jury instructions, but need not define words and expressions that are of ordinary understanding or self-explanatory." *State v. Brown*, 132 Wn.2d 529, 611-12, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998). "A term is 'technical' when it has a meaning that differs from common usage." *Id.* at 611.

"The term 'consent' does not have a technical meaning different from the commonly understood meaning." *State v. VanVlack*, 53 Wn. App. 86, 89, 765 P.2d 349 (1988). In *VanVlack*, we specifically referenced the dictionary definition of "consent" as "'compliance or approval esp. of what is done or proposed by another . . . capable, deliberate, and voluntary agreement to or concurrence in some act or purpose implying physical and mental power and free action.'" *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 482 (1981)).

Humphrey acknowledges that *VanVlack* held that consent is not a technical term. But Humphrey argues that *VanVlack* should be re-examined because the meaning of consent "has been an increasingly debated topic in society in recent years," that is evolving into "a belief that consent should include an express verbal agreement," and that the newly evolved definition deviates from the statutory definition. Br. of Appellant at 28. Therefore, Humphrey argues, the law of consent is not clear without a jury instruction.

However, the definition of consent in the dictionary has remained the same since the decision in *VanVlack*. Consent is still defined in the dictionary as "compliance or approval esp. of what is done or proposed by another . . . capable, deliberate, and voluntary agreement to or concurrence in some act or purpose implying physical and mental power and free action."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 482 (2002). The statutory definition of "consent" defines the term to mean "that at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual conduct." RCW 9A.44.010(7). Thus, the commonly understood meaning of consent remains similar to the statutory definition. Humphrey's arguments that the trial court erred by not giving his proposed jury instruction defining "consent" because "consent" is a technical term and that the holding in *VanVlack* should be reexamined due to the newly evolved definition of consent are unpersuasive. The trial court did not abuse its discretion by rejecting Humphrey's proposed jury instruction defining consent.

B.     PROSECUTORIAL MISCONDUCT

Humphrey argues that the State committed prosecutorial misconduct during closing arguments. We disagree.

To prevail on a claim of prosecutorial misconduct, the defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). First, we determine whether the prosecutor's conduct is improper. *Id.* at 759. If the prosecutor's conduct was improper, we must then determine whether the conduct was prejudicial. *Id.* at 760. We determine whether the defendant was prejudiced under one of two standards of review. *Id.* "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.* If the defendant did not object at trial, the defendant must show that "the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61.

Here, Humphrey did not object at trial, so he must show that the prosecutor's conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. To show conduct is flagrant and ill intentioned, Humphrey must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

1.    The State's Conduct Was Not Improper

Humphrey argues that the State's conduct during closing arguments was improper because the prosecutor expressed personal opinions and used the prestige of their office as a means of swaying the jury. We disagree.

A prosecutor may not express personal opinions of the defendant's guilt independent of the evidence actually in the case. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 706, 286 P.3d 673 (2012). "Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

A prosecutor enjoys wide latitude when making a closing argument. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). A prosecutor is permitted to draw reasonable inferences from the evidence. *Dhaliwal*, 150 Wn.2d at 577. Further, a prosecutor may express an opinion based upon or deduced from the testimony presented in the case. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006). To constitute improper expression of personal opinion, it must be

clear and unmistakable that the prosecutor is expressing a personal opinion. *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995).

It is also improper for a prosecutor to use their position of power and prestige to sway the jury. *Glasmann*, 175 Wn.2d at 706. But using phrases such as "we know" are not improper where it was used to draw reasonable inferences from the evidence. *State v. Robinson*, 189 Wn. App. 877, 895, 359 P.3d 874 (2015).

Here, the record does not clearly and unmistakably show that the prosecutor was expressing any personal opinions about Humphrey's guilt. Instead, the prosecutor made the challenged statements either as a prelude to or as a conclusion after reviewing the evidence presented to the jury.

Humphrey argues that the prosecutor committed misconduct when, in discussing the second degree assault charge, they stated, "'The State alleges—the State believes that this has been proven beyond a reasonable doubt.'" Br. of Appellant at 34 (quoting 6 VRP (June 12, 2019) at 1263). The prosecutor made this comment after going through their "checklist" regarding what they needed to prove beyond a reasonable doubt for the jury to convict Humphrey of second degree assault. 6 VRP (June 12, 2019) at 1259. The prosecutor then reviewed the evidence presented at trial and connected that evidence to the second degree assault charge before making the statement that Humphrey challenges. Thus, the prosecutor did not clearly and unmistakably express a person opinion. Rather, the prosecutor argued what "the State believes" the evidence and reasonable inferences from the evidence showed with regard to the second degree assault charge. 6 VRP (June 12, 2019) at 1263. Humphrey's challenge to the State's argument relating to the second degree assault charge fails.

Humphrey also argues that the prosecutor improperly opined on his guilt when they stated, "'[T]he State alleges and believes has [sic] been proven beyond a reasonable doubt that at least three acts of sexual intercourse occurred. . . . The State believes that all three have been proven beyond a reasonable doubt.'" Br. of Appellant at 35 (emphasis omitted) (quoting 6 VRP (June 12, 2019) at 1276). But the prosecutor did not make these statements in isolation; rather the prosecutor discussed the evidence that supported these statements: "The Defendant's penis in [G.P.T.'s] mouth; the Defendant's—something in her rectum, whether it was a finger, whether it was a penis when she was—when he was behind her; and then his penis being in her vagina." 6 VRP (June 12, 2019) at 1276. Thus, the prosecutor did not express a personal opinion on Humphrey's guilt; rather the prosecutor argued what "the State believes" based on the evidence. 6 VRP (June 12, 2019) at 1276. Therefore, the prosecutor did not clearly and unmistakably express a personal opinion on Humphrey's guilt, and Humphrey's prosecutorial misconduct challenge based on these statements fail.

Humphrey next argues that the prosecutor improperly stated, "'And so was there sex in the vagina? Was there sex in the anus? That's for you to decide. But the State believes that it has been proven beyond a reasonable doubt.'" Br. of Appellant at 36 (quoting 6 VRP (June 12, 2019) at 1277). The prosecutor made these statements about what "the State believes" after discussing the evidence presented by the lab forensics. 6 VRP (June 12, 2019) 1277. Therefore, again, the prosecutor did not clearly and unmistakably express a personal opinion on Humphrey's guilt in the challenged statements, and Humphrey's challenge based on these statements fails.

Finally, Humphrey argues that the prosecutor committed misconduct at the end of their closing argument when they stated, "'The State believes that every element of every charge has

been proven beyond a reasonable doubt.'" Br. of Appellant at 36 (emphasis omitted) (quoting 6 VRP (June 12, 2019) at 1280.) However, the record shows that the prosecutor made the statement after outlining the evidence relied on by the State at trial. Thus, Humphrey's challenge to this statement fails.[3]

Humphrey compares the prosecutor's conduct to a number of other cases where courts have found prosecutorial misconduct. For example, Humphrey relies on *Glasmann*, where the court found prosecutorial misconduct when the prosecutor superimposed the word "guilty" on a PowerPoint presentation and presented other PowerPoint slides with inflammatory statements. *Glasmann*, 175 Wn.2d at 701-02. Humphrey also relies on *State v. Traweek*, where the court found that the prosecutor made improper statements when the prosecutor stated, "'Use your common sense. You know what happened. I know what happened, and I know who did it.'" 43 Wn. App. 99, 106, 715 P.2d 1148 (1986), *review denied*, 106 Wn.2d 1007 (1986). Humphrey further relies on *State v. Case*, where the court found misconduct when the prosecutor stated, "'I doubt in my mind that anyone at this point has any question in their mind about the guilt or innocence of this man…I mean, that is my opinion about what this evidence shows and how clearly this evidence indicates that this girl has been violated.'" 49 Wn.2d 66, 68, 298 P.2d 500 (1956). Humphrey argues that the prosecutor's conduct in his case was similar to those cases.

---

[3] Humphrey also challenges statements the prosecutor made during closing arguments related to the first degree kidnapping and first degree rape charges. However, the jury found Humphrey not guilty on these charges. Therefore, we do not address these challenges other than to note that the record shows that the challenged statements were made after the prosecutor reviewed the evidence and the reasonable inferences from the evidence presented at trial.

The cases that Humphrey rely on are distinguishable because the prosecutor here did not make inflammatory statements and did not clearly and unmistakably express a personal opinion on Humphrey's guilt. Rather, the prosecutor made the challenged statements in connection with a discussion about the evidence presented to prove each charge, which is proper.[4] Because the prosecutor made the challenged statements as a prelude to or as a conclusion after discussing the evidence presented to the jury, the prosecutor's conduct was not improper.

2.      No Prejudice Shown

Humphrey argues that the prosecutor's misconduct was prejudicial because it was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. Humphrey fails to show prejudice.

Because Humphrey did not object to any of the allegedly improper statements made by the prosecutor, he must show that the prosecutor's misconduct was so flagrant and ill intentioned that no instruction could have cured any resulting prejudice. *Emery*, 174 Wn.2d at 760-61. Therefore, Humphrey must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

Here, Humphrey, relying on *State v. Allen*, 182 Wn.2d 364, 341 P.3d 268 (2015), merely makes the conclusory argument that the cumulative effect of the prosecutor's argument overwhelms the power of the instruction to cure. "Repetitive misconduct can have a 'cumulative

---

[4] Although the challenged statements were not clear and unmistakable expressions of personal opinion, the better practice would be to argue what "the evidence shows" rather than what "the State believes."

effect.'" *Allen*, 182 Wn.2d at 376 (quoting *Glasmann*, 175 Wn.2d at 707). However, Humphrey's case is distinguishable from *Allen*. In *Allen*, the prosecutor misstated the law repeatedly during closing arguments, misstated the law repeatedly on their slide show, and misstated the law again verbally and on their slide show during their rebuttal argument. *Id.* at 376-77.

Here, unlike in *Allen*, the prosecutor did not repeatedly misstate the law. Rather, the prosecutor made arguments that "the State believed" it had met its burden of proof immediately before or after they discussed the evidence presented at trial relating to the charges. The prosecutor's conduct was not flagrant and ill intentioned.

Humphrey also argues that there is a substantial likelihood that the prosecutor's misconduct affected the outcome of the trial because he and G.P.T. had conflicting accounts of the incident, and the "prosecutor's improper argument may have tipped the scales in favor of conviction." Br. of Appellant at 41. However, the standard to show prejudice is not that the scales may have been tipped. *See Emery*, 174 Wn.2d at 761. Also, while this case relied heavily on the jury's credibility determination, the prosecutor never made comments regarding either party's credibility.

Humphrey fails to show the prosecutor's conduct was flagrant and ill intentioned or that there was a substantial likelihood that the prosecutor's statements affected the outcome of the trial. Thus, Humphrey fails to show prejudice.

C.   INEFFECTIVE ASSISTANCE OF COUNSEL

The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We review claims

of ineffective assistance of counsel de novo. *State v. Vazquez*, 198 Wn.2d 239, 249, 494 P.3d 424 (2021).

To establish ineffective assistance of counsel, a defendant must show that their attorney's performance was deficient and, if it was deficient, that it was prejudicial. *Grier*, 171 Wn.2d at 32-33. An ineffective assistance of counsel claim fails if the defendant fails to establish either deficient performance or prejudice. *Id.* at 33.

1.       Deficient Performance

Humphrey argues that his defense counsel's performance was deficient because they did not object to the prosecutor's allegedly improper arguments. We disagree.

Performance is deficient if counsel's representation "falls 'below an objective standard of reasonableness'" based on consideration of all the circumstances. *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed .2d 674 (1984)). There is a strong presumption that counsel's representation was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). If the defendant bases their ineffective assistance of counsel claim on the defense counsel's failure to object, "the defendant must show that the objection would likely have succeeded." *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019).

Humphrey argues that there was no legitimate strategic or tactical reason for the defense counsel not to object to the prosecutor's allegedly improper arguments. However, as discussed above, the prosecutor made no improper arguments. Therefore, there was no reason for the defense counsel to make an objection. Thus, the defense counsel's performance did not fall below an

objective standard of reasonableness because no prosecutorial misconduct occurred. Humphrey's ineffective assistance of counsel claim fails.

D.    CUMULATIVE ERROR DOCTRINE

Humphrey argues that the cumulative errors by the trial court violated his right to a fair trial. We disagree.

Cumulative error applies when numerous errors deny the defendant their right to a fair trial, "even if each error standing alone would be harmless." *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813, *review denied*, 170 Wn.2d 1003 (2010). Absent error, the cumulative error doctrine does not apply. *State v. Clark*, 187 Wn.2d 641, 655, 389 P.3d 462 (2017). Because there was no error, the cumulative error doctrine does not apply.

E.    DOUBLE JEOPARDY

Humphrey argues that his convictions for second degree assault with sexual motivation and second degree rape violate the prohibition against double jeopardy. The State agrees with Humphrey. We agree with Humphrey and the State that the convictions for second degree assault with sexual motivation and second degree rape violate the prohibition against double jeopardy.

Whether separate convictions violate double jeopardy is reviewed de novo. *In re Pers. Restraint of Knight*, 196 Wn.2d 330, 336, 473 P.3d 663 (2020). Under double jeopardy, "defendants are protected from being convicted for the same offense twice." *Id*. We must first determine whether the charges constitute the same offense in light of legislative intent. *Id*. If the legislative intent is unclear, we analyze the separate convictions under the *Blockburger* "same evidence" test. *Id*. at 337. Further, "[w]hen legislative intent is unclear, we also consider whether the merger doctrine is applicable." *Id*. Even if the merger doctrine applies, the convictions will

remain separate if there is "'an independent purpose or effect to each.'" *Id.* (quoting *State v. Freeman*, 153 Wn.2d 765, 773, 108 P.3d 753 (2005)).

Here, neither the second degree assault with sexual motivation nor the second degree rape statutes expressly or implicitly authorize cumulative punishment for the separate crimes, nor do the statutes expressly or implicitly authorize the crimes be punished separately. *See* RCW 9A.44.050; RCW 9A.36.021. Thus, it is unclear whether the legislature intended to authorize cumulative punishment for separate crimes.

As for the *Blockburger* "same evidence" test, "'[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *State v. Arndt*, 194 Wn.2d 784, 818, 453 P.3d 696 (2019) (emphasis omitted) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 817, 100 P.3d 291 (2004)), *cert. denied*, 142 S. Ct. 726 (2021).

Here, Humphrey was convicted of second degree assault with sexual motivation and second degree rape. Second degree assault with sexual motivation and second degree rape by forcible compulsion do not require the same proof of facts. While second degree assault requires that "'intentional touching or striking of another person'" must occur, second degree rape by forcible compulsion may be proved through "physical force" or "threat, express or implied." *State v. Jarvis*, 160 Wn. App. 111, 119, 246 P.3d 1280 (2011) (quoting *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007)), *review denied*, 171 Wn.2d 1029 (2011); RCW 9A.44.010(6). Therefore, the crimes do not require the same evidence because second degree rape by forcible

compulsion can be proved through evidence that the defendant threatened the victim, but this evidence would not prove second degree assault.

As to the merger doctrine, we determine whether "'the degree of one offense is raised by conduct separately criminalized by the legislature.'" *Knight*, 196 Wn.2d at 337 (quoting *Freeman*, 153 Wn.2d at 772-73). If this occurs, "'we presume the legislature intended to punish both offenses through a greater sentence for the greater crime.'" *Id.* (quoting *Freeman*, 153 Wn.2d at 772-73).

In contrast to second degree rape, third degree rape requires that sexual intercourse happen without consent or where there was a threat of substantial harm to the victim's property rights. RCW 9A.44.060. A third degree rape charge is elevated to second degree rape when the rape is committed with forcible compulsion. *See* RCW 9A.44.050.

Here, the State argued that the forcible compulsion for second degree rape occurred when Humphrey held a knife to G.P.T.'s neck. This is the same evidence that the State used to prove second degree assault. Therefore, the State essentially used the second degree assault conviction to elevate the rape to second degree rape because it provided the element of forcible compulsion. Thus, because the second degree assault conviction was used to elevate the degree of the rape conviction, the merger doctrine applies.

But even if the merger doctrine applies, the convictions will remain separate "'if there is an independent purpose or effect to each.'" *Knight*, 196 Wn.2d at 337 (quoting *Freeman*, 153 Wn.2d at 773). Independent purpose or effect is established if the crime injures the person "'in a separate and distinct manner from the crime for which it also serves as an element.'" *Id.* at 338

(quoting *Arndt*, 194 Wn.2d at 819). Whether an independent purpose or effect exists depends on the facts of each individual case. *Id*.

Humphrey compares his convictions to those seen in *State v. Williams*, 156 Wn. App. 482, 234 P.3d 1174, *review denied*, 170 Wn.2d 1011 (2010). In *Williams*, the defendant was charged with second degree assault with sexual motivation and first degree rape. *Id*. at 494. The only assault was an attack that occurred before the rape and continued during the rape. *Id*. at 495. This assault was used to effectuate the rape. *Id*. As a result, the court vacated the second degree assault because the assault had no effect or purpose independent of the rape. *Id*.

Like in *Williams*, Humphrey assaulted G.P.T. by holding a knife to her neck before raping her. The assault had no other purpose than to effectuate the rape because he used the knife as a way to lead G.P.T. to a secluded area and then immediately raped her. There was no independent purpose or effect of the two convictions because Humphrey used the assault to effectuate the rape. Therefore, we hold that Humphrey's convictions for second degree assault with sexual motivation and second degree rape violate double jeopardy. We remand to the trial court to vacate Humphrey's conviction for the lesser crime of second degree assault with sexual motivation.

CONCLUSION

We hold that the trial court did not err in not giving jury instructions on the State's burden to prove lack of consent and on the definition of consent, the prosecutor did not commit prosecutorial misconduct, Humphrey did not receive ineffective assistance of counsel, and the cumulative error doctrine does not apply. We agree with Humphrey and the State that his convictions for second degree assault with sexual motivation and second degree rape violate

double jeopardy. Therefore, we affirm Humphrey's conviction for second degree rape, but we remand to the trial court to vacate the conviction for second degree assault with sexual motivation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Glasgow, C.J.