IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) ) ) ) ) | No. 37145-0-III |
| JEREMIAH A. SMITH a.k.a. GLENN ALFONSO AKERS, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) | |

LAWRENCE-BERREY, A.C.J. — Jeremiah Smith, also known as Glenn Akers,[1]

seeks relief from personal restraint after the superior court found him guilty of various

offenses, including first degree felony murder, a most serious offense. Because Smith

had previously been convicted on two separate occasions of a most serious offense, he

was sentenced to life without the possibility of parole (LWOP) under the Persistent

Offender Accountability Act of the Sentencing Reform Act of 1981 (POAA), chapter

9.94A RCW, also known as the "Three Strikes" law. RCW 9.94A.570;

RCW 9.94A.030(37).

Smith advances two central grounds for relief. First, he claims his LWOP

sentence is unconstitutional because it is predicated on a conviction for a crime he

committed when he was 17 years old. Second, he claims he received ineffective

assistance of trial counsel. We disagree with both arguments and deny his petition.

---

[1] In the direct appeal, this court referred to the petitioner as Glenn Akers. Here, however, the parties refer to the petitioner as Jeremiah Smith; thus, we use that name.

FACTS

*First occasion convicted of a most serious offense*

On July 26, 2007, when Jeremiah Smith was 17 years old, he robbed a convenience store at gunpoint. The juvenile court declined jurisdiction, and Smith pleaded guilty to first degree robbery in adult court. First degree robbery is a class A felony and is thus a most serious offense. RCW 9A.56.200(2); RCW 9.94A.030(32)(a).

Although the standard range sentence was 31 to 41 months, the parties recommended an exceptional sentence downward based on Smith's youthfulness and lack of criminal history. On April 21, 2008, the superior court sentenced Smith to 12 months in prison.

*Second occasion convicted of a most serious offense*

In August 2010, Smith was convicted of additional crimes in two separate matters. In one, he was convicted of second degree assault, which Smith committed when he was 18. In the other, he was convicted of first degree burglary and conspiracy to commit first degree robbery, which Smith committed when he was 19. Each of these three offenses are most serious offenses. RCW 9.94A.030(32)(a), (b).

Smith was sentenced to a total of 80 months in prison. His release date for his 2010 convictions was August 10, 2015. However, due to a software coding error, Smith was released early—on May 14, 2015.

*Third strike offense*

Twelve days after he was prematurely released from prison, Smith shot and killed Ceasar Medina[2] at Northwest Accessories, a head shop in Spokane, Washington, and committed other crimes. Smith was 25 years old when he killed Medina.

The State charged Smith with first degree felony murder, first degree burglary, conspiracy to commit first degree robbery, first degree assault, first degree unlawful possession of a firearm, and witness tampering. The State based the felony first degree murder charge on an allegation that Smith had entered the business without permission and with intent to commit a crime. Smith retained Tracy Collins as his defense attorney.

Smith's case made national and local news due to the fact Smith had been released from prison early because of the coding error. More than 3,000 prisoners were released early due to the error, and Smith was among a handful of offenders who reoffended during the time they should have been incarcerated. Examples of the media coverage were as follows:

- The Associated Press featured a mugshot of Smith and reported, "Ceasar Medina was one of two deaths tied to the early release of more than 3,000 prisoners due to a software coding error. Authorities say he was killed May 26 by Jeremiah Smith, who was wrongly released on May 14. Less than two weeks later, he gunned down 17-year-old Ceasar Medina." Personal Restraint Petition (PRP) App., Attach. 3, Smith Decl., Ex. C, at 174 (Associated Press,

---

[2] At various points in the record, Ceasar Medina's first name is listed as Cesar.

> *Mom of Son Allegedly Killed by Released Inmate to Sue State*,
> KOMO NEWS (Feb. 26, 2016)).

- An article in *Big Think* began by stating, "Ceasar Medina died because of a computer glitch. Though he was shot in a botched robbery attempt, his killer—a convicted felon named Jeremiah Smith—should have been behind bars at the time." PRP App., Attach. 3, Smith Decl., Ex. C, at 199 (Chris Clearfield & András Tilcsik, *Meltdown: Why Our Systems Fail and What We Can Do about It*, BIG THINK (Mar. 23, 2018)).

- A Reuters article, republished in *Business Insider*, used the headline "Former Washington Inmate Charged with New Murder after Being Released from Prison by Mistake." The article also quoted former DOC Secretary Dan Pacholke, who said, "'I'm heartsick that this tragedy occurred at all, much less during the time in which Jeremiah Smith should have been incarcerated.'" Smith's first attorney, Collins, was quoted in the same article saying that "he was concerned that his client's right to a fair trial might be hampered by 'him being identified with this group of inmates released early by the state.'" PRP App., Attach. 3, Smith Decl., Ex. C, at 189-91 (Eric Johnson, *Former Washington Inmate Charged with New Murder after Being Released from Prison by Mistake*, BUSINESS INSIDER (Jan. 1, 2016, 4:26 AM)).

- The Associated Press also quoted Collins stating "he worried the publicity about the early release of prisoners would affect his client's ability to get a fair trial, [and] '[w]e have to keep in mind that he's innocent of this charge until proven guilty.'" PRP App., Attach. 3, Smith Decl., Ex. C, at 244 (Phuong Le, *Prisoner Mistakenly Released Early Charged with Killing Teen*, BIG STORY (Dec. 31, 2015, 6:56 PM)).
- A CBS News article reported that Smith was "charged with fatally shooting a teenager during a robbery that took place when he should still have been detained" and that DOC Secretary Pacholke and Governor Inslee "apologized to Medina's family." PRP App., Attach. 3, Smith Decl., Ex. C, at 179 (CBS NEWS, *Prisoner Mistakenly Released Early Charged with Killing Teen* (Dec. 31, 2015, 4:05 PM)).

- A King 5 News article included a mugshot with the headline "Wrongly-released inmate charged with Spokane murder." PRP App., Attach. 3, Smith Decl., Ex. C, at 207 (KING 5 NEWS (Dec. 31, 2015, 6:01 PM)).

- A New York Daily News tabloid stated "[a] Washington state man who was supposed to be locked up shot and killed a teen during a robbery in Spokane, officials said Thursday. Jeremiah Smith, 26, is back behind bars after he gunned down a 17-year-old man May 26 in the second death linked to the mistaken early release of up to 3,200 inmates." PRP App., Attach. 3, Smith Decl., Ex. C, at 238 (Tobias Salinger, *Mistakenly Released Washington State Inmate Murdered Teen when Convict was Supposed to be Behind Bars*, NEW YORK DAILY NEWS (Dec. 31, 2015, 6:40 PM)).

Similar stories to the ones listed above ran in the *Seattle Times*, on Fox News, KXLY News, *The Herald of Everett*, KREM 2 News, U.S. News, *The Washington Post*, and more.

Despite Collins's concerns about his client's ability to get a fair trial, Collins did not move for a change of venue. About 10 months after Collins was retained, he withdrew because of Smith's inability to pay his fees and because of a breakdown of the attorney-client relationship. The court then assigned Timothy Trageser as Smith's appointed counsel. Seven months later, Trageser withdrew from the case, citing a conflict of interest and was replaced by Michael Felice, who tried the case.

Prior to trial, Felice sent an e-mail to the prosecutor and the superior court, stating:

> I wanted to let the court know there is a strong likelihood this matter will be a bench trial. . . . At this point, [Smith] has not yet signed the waiver of jury trial, but we have discussed the matter *over the last few weeks*. Mr. Smith should reach a final decision by this Friday, I will keep you informed.

Resp. to Pers. Restraint Pet. (PRP), Attach. E.-3 (emphasis added). Two days later, Felice e-mailed the parties stating that Smith had signed a waiver of jury trial.

The matter proceeded to a bench trial and the court found Smith guilty of first degree felony murder, first degree burglary, first degree assault, and first degree unlawful possession of a firearm. The court acquitted Smith of conspiracy to commit first degree robbery and witness tampering. Finding that Smith had been convicted of a most serious offense on two prior occasions, the trial court imposed an LWOP sentence.

PROCEDURE

Smith appealed his convictions to this court. While his direct appeal was pending, Smith, acting pro se, filed the instant PRP. We stayed proceedings in Smith's PRP pending the outcome of his direct appeal.

This court issued its opinion in the direct appeal, affirming Smith's convictions. *See State v. Smith*, No. 36213-2-III, slip op. at 22 (Wash. Ct. App. Feb. 16, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/362132_ord.pdf. Smith unsuccessfully petitioned the Washington Supreme Court for review. Our mandate in Smith's direct appeal issued and his appeal became final. RCW 10.73.090(3)(b). We lifted the stay and called for a response from the State.

Soon after, attorney Emily Gause appeared for Smith and requested permission to file an amended petition, which we granted. Smith filed his amended petition within one year of the issuance of our mandate in his direct appeal; thus, his amended petition is timely. RCW 10.73.090.

We later stayed this petition because Smith raised the same issue that would be decided in *State v. Reynolds*, 2 Wn.3d 195, 535 P.3d 427 (2023). In *Reynolds*, the court "granted review on the question of whether counting an adult conviction for a crime committed as a juvenile as a 'strike' violates the United States or state constitutional protections against cruel or cruel and unusual punishment." *Id.* at 201. Once the Supreme Court issued its opinion in *Reynolds*, we lifted the stay in this matter.

LAW AND ANALYSIS

*Legal standards governing personal restraint petitions*

Collateral relief from a conviction is an extraordinary remedy that seeks to disturb a final judgment; therefore, a personal restraint petitioner must meet a high standard to obtain relief. *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 12, 513 P.3d 769 (2022). When claiming relief on the basis of trial court error, the personal restraint petitioner in most cases must demonstrate that they were actually and substantially prejudiced as a result of constitutional error or that the trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016). The petitioner

must make this showing by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). "'[N]aked castings into the constitutional sea are not sufficient to command judicial considerations and discussion.'" *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988) (internal quotation marks omitted) (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)).

The petitioner must state the "facts upon which the claim of unlawful restraint of petitioner is based and the evidence available to support the factual allegations." RAP 16.7(a)(2). Thus, a petitioner must state with particularity facts that, if proved, would entitle the petitioner to relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). A petitioner may support a petition by relating material facts within the petitioner's personal knowledge, even if the petitioner's version of the facts are self-serving. *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 641, 362 P.3d 758 (2015). But bald assertions and conclusory allegations are not sufficient. *Rice*, 118 Wn.2d at 886. Arguments made only in broad general terms are also insufficient. *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 327, 394 P.3d 367 (2017). Factual allegations must be based on more than mere speculation, conjecture, or inadmissible hearsay. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013).

Having set forth the legal standards governing this petition, we now address the two issues raised by Smith.

1.      *Constitutionality of LWOP Sentence*

Smith contends his LWOP sentence based on a predicate offense that occurred when he was a juvenile violates the Eighth Amendment to the United States Constitution and article I, section 14 of the Washington State Constitution.  His argument relies on the Washington Supreme Court's decision in *State v. Bassett*, 192 Wn.2d 67, 428 P.3d 343 (2018).  In *Bassett*, the court held "that sentencing juvenile offenders to life without parole or early release constitutes cruel punishment . . . and therefore is unconstitutional under article I, section 14 to the Washington Constitution."  *Id.* at 73 (citations omitted).

Smith raised this issue in his direct appeal.  Ordinarily, a personal restraint petitioner may not renew a ground for relief that was raised and rejected on direct appeal unless the interests of justice require reconsideration of that ground.  *In re Pers. Restraint of Knight*, 196 Wn.2d 330, 341, 473 P.3d 663 (2020).  A ground for relief was "raised and rejected on direct appeal" if the same ground presented in the petition was determined adversely to the petitioner on appeal and the prior determination was on the merits.  *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 687, 717 P.2d 755 (1986).

On review of Smith's argument in his direct appeal, we determined he had not preserved any error in the trial court and we found no manifest constitutional error; thus, we declined to reach the merits of Smith's challenge.  We stated:

9

> The Washington State Supreme Court has not expressed an opinion on whether the State may apply the [POAA] . . . to an offender who committed a strike offense as a juvenile and was convicted in adult court.
>
> . . . .
>
> We encourage the Washington Supreme Court to directly address this important constitutional issue. Because the law does not clearly support [Mr. Smith's] position, we decline to do so for the first time on appeal.

*Smith*, slip op. at 21-22. As noted above, we stayed this petition pending the Supreme Court's decision in *Reynolds*, which is dispositive of this first issue.

In *Reynolds*, the defendant committed a robbery when he was 17 years old. 2 Wn.3d at 200. The State charged him with first degree robbery, and the juvenile court declined jurisdiction and transferred the case to adult court. *Id.* His conviction for that offense served as his first strike. Reynolds committed a robbery and a burglary when he was 21 years old. *Id.* The State charged him with first degree robbery and first degree burglary. *Id.* His convictions for those offenses served as his second strike. *Id.* Reynolds committed burglary and attempted rape when he was 33 years old. The State charged him with first degree burglary and second degree attempted rape. After a jury trial, he was convicted of those charges. *Id.* Because those convictions served as his third strike, the trial court imposed an LWOP sentence. *Id.*

Reynolds appealed and Division One of this court affirmed his convictions. *Id.* The Supreme Court granted review. *Id.* In his briefing, Reynolds argued that under *Bassett*, the state constitution categorically bars imposing an LWOP sentence on an

10

offender who committed their first strike as a juvenile. *Id.* at 202-03. He also contended

that his LWOP sentence was unconstitutionally disproportionate under *State v. Fain*,

94 Wn.2d 387, 617 P.2d 720 (1980). *Id.* at 203.

The court analyzed the defendant's categorical claim under *Bassett* as well as his

claim of unconstitutionality under the *Fain* proportionality analysis. *Id.* But in doing so,

it was cognizant of *State v. Moretti*, 193 Wn.2d 809, 826, 446 P.3d 609 (2019).

*Reynolds*, 2 Wn.3d at 203. The court noted that in *Moretti*, it had held that an LWOP

"sentence punishes the current crime rather than the prior strikes." *Id.* The court rejected

Reynolds's constitutional arguments, holding:

> Reynolds is correct that "'children are different'" and that an
> offender's status as a juvenile mitigates that juvenile's culpability.
> But Reynolds is not a juvenile and he was not sentenced to LWOP
> for a crime that he committed as a juvenile. He was sentenced to LWOP
> for first degree burglary and attempted second degree rape, which he
> committed at age 33. His previous criminal conduct aggravates his
> sentence, but under recent, controlling precedent, his punishment is for his
> adult conduct.
> We therefore hold that Reynolds' sentence is not unconstitutional
> under article I, section 14 [of the Washington State Constitution] or the
> Eighth Amendment.

*Id.*

Here, similar to the petitioner in *Reynolds*, Smith committed his first strike

offense when he was 17 years old, his second strike offense when he was 18 and

19 years old, and his third strike offense when he was 25 years old. Smith's

juvenile conduct merely aggravated the sentence imposed for his adult criminal

conduct. Under *Reynolds* and *Moretti*, Smith's LWOP sentence is a punishment

for his adult conduct and is not unconstitutional. *Reynolds* forecloses Smith's

challenge to his LWOP sentence, and we deny relief on this claim.

> 2.     *Ineffective Assistance of Counsel*

To be entitled to relief in a petition raising an ineffective assistance of counsel

claim, the petitioner must show both that (1) defense counsel's representation was

deficient and (2) the deficient representation was prejudicial. *In re Pers. Restraint of

Crace*, 174 Wn.2d 835, 840, 846-47, 280 P.3d 1102 (2012) (citing *Strickland v.

Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Representation is

deficient if, after considering all the circumstances, it falls below an objective standard of

reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). A petitioner

alleging ineffective assistance of counsel must overcome a strong presumption that

counsel's performance was reasonable. *Id.* "When counsel's conduct can be

characterized as legitimate trial strategy or tactics, performance is not deficient." *State v.

Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

A petitioner establishes actual and substantial prejudice if the petitioner meets the

standard of prejudice applicable on direct appeal: that, but for counsel's deficient

performance, there is a reasonable probability the outcome would have been different.

*In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). "An error by

counsel, even if professionally unreasonable, does not warrant setting aside the judgment

of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. If one prong of the test fails, this court need not address the remaining prong. *State v. Crow*, 8 Wn. App. 2d 480, 507, 438 P.3d 541 (2019).

Smith raises two claims of ineffective assistance of counsel. We address each in turn.

### a. Failure to protect right to an impartial jury

Smith claims his trial counsel's performance was deficient for failing to protect his right to a trial by an impartial jury and for leaving him with the impression that he had little choice but to waive the right all together. He further claims his jury trial waiver was invalid because his counsel failed to advise him of other means to mitigate the prejudicial pretrial publicity. He asserts he was prejudiced by trial counsel's deficient performance because it is reasonably probable that an impartial jury of 12 would not have convicted him, and that the trial court's decision was not impartial because the judge feared scrutiny from the media.

In his petition, Smith states "there is no question that the pretrial publicity threatened [his] right to a trial before an impartial jury." PRP at 36. He avers that the media's portrayal of him as a habitual offender, murderer, and prisoner, coupled with racial stereotypes and information about his criminal history was as prejudicial as crime coverage could be. In his declaration attached to his petition, he states:

13

21.    Due to this extensive and inflammatory coverage of my case, I believed that a local jury would be biased against me before hearing any evidence at trial.

22.    I expressed this concern to each of the three different attorneys who represented me and insisted that they take action to protect my right to trial by an impartial jury.

. . . .

25.    I asked my attorneys to file a [change of venue] motion, but each of them declined to do so.

26.    In addition to failing to file a motion for a change of venue, none of my trial attorneys advised me about other procedures potentially available for protecting my right to an impartial jury, such as rigorous individual questioning of prospective jurors, extended voir dire, challenging biased jurors for cause, sequestration of the jurors during trial, and admonishments to the jurors to refrain from accessing or using outside information about the case.

27.    I was unaware of the availability of these procedures at any time during the trial proceedings because my attorneys failed to tell me about them or about how use of these procedures could protect my right to an impartial jury.

28.    On May 11, 2018, I signed a Waiver of Jury Trial, waiving my right to a trial by an impartial jury based on my belief that there were no procedures available, or which my attorneys were willing to pursue, through which I could receive an impartial jury.

. . . .

31.    I believed my only options were between a jury biased against me or a bench trial. I therefore elected to have a bench trial based on my belief that an impartial jury was not available to me.

PRP App., Attach. 3, Decl. of Smith, at 4-6.

An examination of Smith's ineffective assistance of counsel claim requires us to first determine whether his waiver of his right to a jury trial was knowing, intelligent, and voluntary. In Washington, a defendant's waiver of his right to a jury trial must be "voluntary, knowing, and intelligent." *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207,

14

691 P.2d 957 (1984). "[A]ll that is required is a personal expression of waiver from the defendant." *State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994). This personal expression can be either a written waiver or a colloquy. *See State v. Wicke*, 91 Wn.2d 638, 645-46, 591 P.2d 452 (1979).

Here, the record does not support Smith's contention that his waiver was involuntary. As explained above, attorney Felice informed the court and the prosecutor that Smith had been contemplating a bench trial for a "few weeks." Resp. to PRP, Attach. E.-3. And Smith signed a written waiver of his right to a jury trial. Furthermore, the trial court engaged in a lengthy colloquy with Smith about his decision to waive his right to a jury:

> THE COURT: . . . Mr. [Smith], your attorney has handed up a waiver of jury trial. It looks like it's dated May 3rd, and it appears to be your signature on.
> Is that your signature there?
> [MR. SMITH]: Yes, sir.
> THE COURT: What this waiver indicates is that you're waiving your right to a jury trial and you're agreeing to have your charges tried by the Court.
> Did you have a chance to talk with your attorney about that?
> [MR. SMITH]: Yes, sir.
> THE COURT: You have the right under both State constitution as well as the Federal constitution to have a jury of 12 decide whether the State is able to prove each element of each crime beyond a reasonable doubt. Regardless as to whether your case is tried to the jury or to the Court, the State always has the burden of proving each element of each crime beyond a reasonable doubt.

15

When it comes to a bench trial, it's up to the Court to make a determination as to whether or not the State has done that. When it comes to a jury trial, the State would have to prove beyond a reasonable doubt each element of each crime to a unanimous jury. That means all 12 jurors would have to unanimously agree that the State has proven each element of each crime beyond a reasonable doubt. If even one juror doesn't think the State has proven an element of any crime, then a jury can't find you guilty as to that charge. By the same token, the jury would unanimously have to agree that the State hasn't met their burden or proved each element beyond a reasonable doubt for a jury to return a verdict of not guilty.

Do you understand that?

[MR. SMITH]:     Yes, sir.

THE COURT:     So here's the primary difference: When your case is tried to the Court, there's one person who makes a determination as to whether or not the State has proven every element beyond a reasonable doubt. When it's tried to a jury, only one of 12 people have to make a determination that they didn't prove something beyond a reasonable doubt and that would preclude the State from being able to prove guilty. So if one person out of 12 isn't convinced that the State has proven something, that would prevent the State from convicting you on a charge.

Do you understand that?

[MR. SMITH]:     Yes, sir.

THE COURT:     With all that in mind, do you still wish to proceed without a jury?

[MR. SMITH]:     I'll trust the Court more.

THE COURT:     Do you have any questions about this waiver?

[MR. SMITH]:     No, we went over it.

THE COURT:     Do you think you had enough time to make this decision or would you like some more time to talk to your attorney and consider it further?

[MR. SMITH]:     No, it's been enough time.

THE COURT:     Has anyone promised you anything or tried to induce you in any way to get you to waive your right to a jury trial?

[MR. SMITH]:     No, sir.

THE COURT:     So that's entirely your own decision after consulting with your attorney?

[MR. SMITH]:     Yes, sir.

THE COURT:     Do you have any questions for me?

[MR. SMITH]:     No.

16

> THE COURT:     Based upon the documentation you provided as
> well as your statements, sir, what I'm going to do is find that you
> knowingly, intelligently, and voluntarily waive your right to a jury trial and
> you've done so with an understanding as to the consequences or the
> distinction between a jury trial and a bench trial. So at this time I'll sign
> that waiver.

Rep. of Proc. (No. 36213-2-III) (May 11, 2018) at 4-7 (emphasis added).[3]

As the foregoing demonstrates, Smith's waiver of a jury trial was knowing, intelligent, and voluntary. Not only did he sign a formal jury trial waiver, the trial court thoroughly explained to Smith the rights he was giving up and assured itself that Smith understood those rights, had time to consider the consequences of waiving them, and was doing so voluntarily. Smith's own self-serving statement to the contrary does not convince us that his waiver was not knowing, intelligent, and voluntary.

We next address Smith's claim that attorney Felice's performance was deficient for leaving Smith with the impression he had little choice but to waive the right altogether and for failing to advise him of ways adverse pretrial publicity might be mitigated.

---

[3] Prior to filing its response to Mr. Smith's petition, the State filed a motion to electronically transfer the record from Mr. Smith's direct appeal—No. 36213-2-III—to this PRP. This court granted the motion, in part, taking judicial notice of the record filed in the direct appeal.

17

As noted above, a petitioner must overcome a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A petitioner alleging ineffective assistance of counsel must overcome a strong presumption that counsel's performance was reasonable and, when counsel's strategy can be characterized as legitimate trial strategy or tactics, counsel's performance cannot be deemed deficient. *Kyllo*, 166 Wn.2d at 863. With respect to waiver, "[c]ounsel's advice on this point falls within the area of judgment and trial strategy and as such rests exclusively in trial counsel." *State v. Thomas*, 71 Wn.2d 470, 471, 429 P.2d 231 (1967). This is so because it is reasonable for counsel to advise that "a judge would be less easily inflamed or swayed by emotion than a jury." *Id.*

To the extent attorney Felice advised Smith to waive his right to a jury trial, the advice constituted a valid, tactical decision given the amount of pretrial publicity Smith's case received. The decision was also a strategic one, considering the brutal nature of the crimes for which the State had charged Smith. Because Smith's waiver of his right to a jury trial was effective and because attorney Felice's advice to proceed to a bench trial constituted a legitimate, tactical decision, Smith is unable to show that his attorney's performance was deficient. We conclude that he is unable to satisfy *Strickland*'s first prong.

18

As to Smith's argument that the trial judge was influenced by pretrial publicity or fear of posttrial criticism, his claim is purely speculative, which is insufficient to obtain relief. *Yates*, 177 Wn.2d at 18. We additionally note that the trial court acquitted Smith on two of the six felony charges. Without more, we presume Smith's trial judge abided by the judicial code, which prohibits external influence on judicial decisions. CJC, Rule 2.4(A) ("A judge shall not be swayed by public clamor, or fear of criticism."). We conclude that Smith is not entitled to relief on this claim.

### b. Failure to challenge the LWOP sentence

Smith next contends that attorney Felice's performance was deficient because he failed to challenge the constitutionality of Smith's LWOP sentence. Smith argues that if the challenge had been raised, he would have received a sentence less than life in prison.

It is well established that counsel is not ineffective for failing to anticipate changes in the law or argue for a change in existing law. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 938-39, 952 P.2d 116 (1998). Thus, attorney Felice's failure to challenge the constitutionality of a sentence that was statutorily mandatory cannot be the basis for an ineffective assistance of counsel claim. But even if it could be said that his attorney should have challenged the LWOP sentence, as confirmed by *Reynolds*, the challenge would have failed. We conclude that Smith is not entitled to relief on this claim.

For the reasons discussed above, we deny Smith's petition.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Pennell, J.

Staab, J.